### J. W. HALSELL ET AL. v. HUGH W. FERGUSON ET AL.

#### No. 2870.    Decided April 10, 1918.

**1.—Lot Owners—Easements and Servitudes.**

Those who purchase city lots in reliance on the representations as to adjoining property embodied in the plats by which same was laid out by its owners and approved by the city may acquire an easement or servitude of which they can not be deprived either by other lot owners or by the city without their consent. Harrison v. Boring, 44 Texas, 266, approved. (P. 155.)

**2.—Police Power—City—Building Regulations.**

A section in a city charter requiring owners of property platting same into blocks and lots to conform to the streets and lots abutting on same, and an ordinance constituting part of the "building code" of the city, requiring owners of lots laid out by plot to conform, in erecting their buildings, to the frontage of their respective lots as shown by such plats, were each a valid exercise of the police power of the State and of the city, respectively. (P. 154.)

**3.—Same—Injury to Property—Compensation.**

Owners of property must submit, in its use, to reasonable regulations by the State or municipality coming within their legitimate police powers, and, though suffering damage thereby, are not entitled to compensation. (P. 154.)

**4.—Cities—Estoppel—Streets, Lots and Building Regulations.**

A city, under a charter requiring owners, in platting their property as additions, to conform to existing streets and their abutting lots, and which had by ordinance adopted a building code requiring lot owners in building to conform their frontage to that of their lots as platted, compelled certain owners to so plat their property as to dedicate therefrom an extension of an existing street, and to front their lots as so platted thereon. By so doing the city was estopped, as against owners purchasing neighboring lots in reliance on such platting and frontage, from authorizing a replatting of such property and building thereon with a different frontage so as to depreciate the value of such neighboring lots. (P. 155.)

**5.—Estoppel—Frontage of Lots and Buildings.**

Owners of property who had platted same with lots having a given street frontage, under city ordinances requiring them in building to conform to the

frontage of their lots as platted, were estopped as against other lot owners who had bought in reliance on the frontage and future building on such neighboring lots as so platted, from replatting, changing their lot frontage, and building thereon so as to depreciate the property of the others by presenting thereto the rear of their property and buildings; and this, though the replatting and change of their building front was authorized by the city. (P. 155.)

**6.—Injunction—Lot Owners—Damage to Property—Frontage of Buildings.**

Injunction was properly granted at suit of lot owners to prevent damage to their property by erection of buildings on neighboring lots with a frontage made illegal by the building regulations of the city in connection with the plats by which their property was laid off. (P. 155.)

Questions certified from the Court of Civil Appeals for the Fifth District, in an appeal from Dallas County.

*Adams & Stennis,* for appellants.—The right to property includes the right to use it in such way as seems most advantageous to the owner. Missouri Pac. Ry. Co. v. Cullers, 81 Texas, 382; 1 Sutherland on Damages, 3-5; Sherman Gas & E. Co. v. Belden, 103 Texas, 59, 123 S. W., 119; Letts v. Kessler, 54 Ohio St., 73; Giller v. West, 162 Ind., 17; 40 L. R. A., 831.

The city building ordinance was unconstitutional. Eubank v. City of Richmond, 42 L. R. A. (N. S.), 1123; 8 R. C. L., sec. 12; Lamar County v. Clements, 49 Texas, 354; Corsicana v. Anderson, 33 Texas Civ. App., 596, 78 S. W., 261.

*Cecil L. Simpson,* for appellees.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

Questions certified from the Court of Civil Appeals of the Fifth Supreme Judicial District of Texas, on an appeal from the District Court of Dallas County.

The certificate of the honorable Court of Civil Appeals is as follows:

"This is an appeal from an order of the District Court of Dallas County, Texas, directing the issuance of a temporary writ of injunction as prayed for by the plaintiffs below, appellees here, restraining the appellants, their agents and representatives from building a house on lots 5 and 6 in block 668 of the City of Dallas, Dallas County, Texas, except in so far as the same may conform to the frontage of said lots on Harry Avenue, as originally platted, in said city. The appellees allege in their petition, in substance, that they are the owners of part of lot No. 12 in block No. 27, according to the official map of said city, which is situated at the southeast corner of Harry Avenue and Annex Avenue; that said lot fronts 67½ feet on Harry Avenue and runs back along Annex Avenue 200 feet, and is in the residence section of the City of Dallas; that appellant, J. W. Halsell, is the owner of lots Nos. 5 and 6 in block 668 of said City of Dallas, which adjoin each other

and front on Harry Avenue, and run back along Annex Avenue and California Avenue 150 feet; that said lots 5 and 6 are located west and immediately across Annex Avenue from appellees' said lot; that said Halsell has contracted to sell or is about to sell or has sold said lots 5 and 6 or a part of said lots to the appellant, W. L. Provine. Appellees further allege that they acquired said lot 12 in block 668 by deed dated August 29, 1914; that at the time they so acquired the same there was and now is upon it a five-room frame house and other improvements of the reasonable market value of $2250, and that the lot, exclusive of the improvements thereon, is of the reasonable market value of $1500; that said house on said lot faces or fronts Harry Avenue; that Harry Avenue is a street about fifty feet wide and extends from California Avenue on the west to Prairie Avenue on the east, being a distance of two blocks, and that at the time appellees purchased their said lot 12 buildings had been erected on both sides of Harry Avenue fronting on said avenue in excess of fifty per cent of the entire frontage of said avenue and that said buildings are still fronting on said avenue. Appellees further allege that Annex Avenue is a well defined thoroughfare and street about fifty or sixty feet wide, extending south from Harry Avenue a long distance, and was so defined at the time appellees acquired their said lot; that appellees' lot is in Alexander's Park Addition to the City of Dallas, and that said lots 5 and 6 owned by appellants are now a part of what is known as Bergfield Place, a subdivision of block "D" of said Alexander's Park Addition; that said Bergfield Place Addition was mapped and platted showing the frontage of lots 5 and 6 owned by appellants on Harry Avenue, when they purchased and that said map was and is now of record in Dallas County, Texas, and that appellants purchased with reference to said map and plat and at the time they purchased there were no improvements on their lots. Appellees allege that section 2 of the ordinance of the City of Dallas amending section 161 of the building code of said city passed March 4, 1913, and which is now in effect, reads: "That whenever any lots are laid off by any plat showing a frontage for said lots on any street or avenue in the residence section of the city all buildings erected on same shall keep their frontage on said streets or avenues so as to conform to the frontage of lots shown by any plat"; that soon after appellees acquired their lot the appellant Halsell made an effort to secure a permit from the building inspector of the City of Dallas authorizing him to erect a residence on parts of his said lots 5 and 6, fronting on said California Avenue, with the rear thereof towards Annex Avenue and appellees' property directly across the street from appellants' property; that said inspector refused to grant such permit because same was in violation of the ordinances and charter of the City of Dallas governing such matters; that thereafter and on the 29th day of May, 1915, appellant Halsell made application to the Mayor and Board of Commissioners of the said City of Dallas to be allowed to replat his said lots 5 and 6 so as to make three lots of the same facing

west California Avenue and extending back to Annex Avenue; that on May 31, 1915, by resolution said Mayor and Board of Commissioners granted the said application of said appellant; that appellees had no notice that said application had been made and granted until December 22, 1915, when they were informed that appellants were about to erect a building on part of their said lots fronting on California Avenue; that when they discovered that appellants were about to so erect said building they immediately protested against a permit being granted therefor, but over said protest a permit for the erection of said building was granted and appellants were proceeding to erect the same fronting on California Avenue. Appellees allege that the resolution passed by the Mayor and Board of Commissioners on May 31, 1915, permitting the appellants to replat said lots so as to face California Avenue is void because the same was passed without notice to appellees and others whose property would be affected and greatly damaged thereby and because said resolution is in direct conflict with section 3 of article 1 of the charter of the City of Dallas, which reads: "Should any property lying within the city limits as established by this Act be hereafter platted into blocks and lots, then and in that event the owners of said property shall plat and lay the same off to conform to the streets and lots abutting on same, and shall file with the city engineer a correct map of same, provided that in no case shall the City of Dallas be required to pay for any of said streets at whatever date opened, but when opened by reason of platting of said property at whatever date platted they shall become by such act the property of the City of Dallas for use as public highways and may be cared for as such." Plaintiff further charged that if appellants are permitted to proceed with their building and improvements, as contemplated and intended by them, Annex Avenue will virtually be reduced to an alley and appellees' property will be damaged thereby in the sum of one thousand dollars. The appellees' petition closes with an appropriate prayer for the relief sought.

The appellants answered by a general demurrer and special answer. They allege, in substance, that on February 21, 1913, the Bergfield Building & Investment Company, a voluntary association composed of the said J. W. Halsell and other stockholders, acquired what was then known as block "D" of Alexander's Park Addition to the City of Dallas; that said block was then divided into five lots fronting on Munger Avenue, and the shortest of said lots was 598 66/100 feet long, and unimproved; that to enable the owner of said property to utilize the same for residence property they proceeded to subdivide said block "D" into two blocks numbered 1 and 2 and platted same as Bergfield subdivision of block "D" of Alexander's Park Addition, fronting the lots involved in this controversy and other lots on California Avenue; that at an expense of about $19,000 they surveyed, graded and otherwise improved said entire block as subdivided; that the then said owners were notified by the street commissioner of the City of Dallas that he would not approve said subdivision, and refused to permit the filing of said

last mentioned plat and directed that the same be changed by extending Harry Avenue across block 1 of said subdivision to California Avenue in said subdivision, thereby appropriating a strip fifty feet wide out of said block 1 for street purposes, and thereby dividing said block 1 into two blocks, the west end to be numbered 1 and the east end to be numbered 2, and ordered that the west end of said block No. 2 and known on the map as lots 5, 6 and 7, be replatted into lots 5 and 6 (which are the lots in controversy), fronting on said extension of Harry Avenue and that said subdivision as changed be filed as a plat of said subdivision; that said owners were compelled to and under protest did plat said property as ordered by said street commissioner; that said lots 5 and 6, fronting on Harry Avenue, as platted under protest were of the reasonable value of $3000, but as divided into three lots fronting on California Avenue was and is of the reasonable value of $3750. Appellants further aver that the said J. W. Halsell and others in May, 1915, applied to the street commissioner and to the Mayor and Board of Commissioners of the City of Dallas for permission to amend and change and replat said portion of said subdivision then known as lots 5 and 6 as to divide the same into three lots, 5, 6, and 7, and to front said three lots on California Avenue; that thereafter on the 31st day of May, 1915 (as alleged by appellees), said Board of Commissioners granted said application and directed said lots to be divided and replatted into three lots fronting on said California Avenue; that in pursuance to such order of the Board of Commissioners the appellants did on said date amend, change and replat said lots 5 and 6 as directed and that said amended plat has been certified and filed with the engineer of said city; that in December, 1915, the owners, relying upon their rights under said amended plat, sold to the appellant Provine said lot 6 as per said amended plat, with the understanding that a residence would be at once constructed thereon; that a permit for said improvements was in good faith applied for and issued by the building inspector of the City of Dallas and appellants were in good faith proceeding under and by virtue of said permit to erect said house until restrained by the writ in this case. Appellants further aver that there never was any privity of contract between them and the appellees, nor between those under whom appellees claim and appellants pertaining to the direction in which any of said lots or buildings to be erected thereon should front, and that the order of the street commissioner of the City of Dallas requiring the extension and opening of Harry Avenue across a portion of said block 1 and the fronting of said lots 5 and 6 on said avenue was without compensation to the owners thereof, was without authority of law and void; that if said order ever had any force or effect the same was repealed and annulled by the order of the Board of Commissioners made and passed on the 31st day of May, 1915. Appellants aver that by fronting that portion of block "D" which is involved in this suit on California Avenue the owners of said property have three lots each 50 feet wide by 140 feet deep, but if compelled to

front said property on Harry Avenue they have only two lots, as same is insufficient in width for three lots; that the owners of said property have never received any compensation from anyone to reimburse them for what they would lose if compelled to front said lots on Harry Avenue rather than on California Avenue, and that no compensation is now offered them to reimburse them for such loss. Appellees make further allegations, but we deem it unnecessary to state them for the purposes of this certificate. The material facts are as follows:

Section 3 of article 1 of the charter of the City of Dallas now in force and adopted prior to 1909, is as follows: "Should any property lying within the city limits as established by this Act be hereafter platted into blocks and lots, then and in that event the owners of said property shall plat and lay the same off to conform to the streets and lots abutting on same, and shall file with the city engineer a correct map of same; provided, that in no case shall the City of Dallas be required to pay for any of said streets at whatever date opened, but when opened by reason of platting of said property at whatever date platted, they shall become by such act the property of the City of Dallas for use as public highways, and may be cared for as such."

Section 161 of what is commonly known as the Building Code of the City of Dallas, as amended March 4, 1913, and now in force, is as follows:

"Section 161. That wherever fifty per cent or over of the lots on any street or avenue in the residence sections of the City of Dallas have been improved, and the building line of said residences on said street or avenue made permanent, all buildings hereafter erected on adjoining lots shall keep the front building line of any such building at the average distance back from the front line as those already built, so that the same shall conform to the permanent building line observed by fifty per cent or over of the improved lots on said street or avenue. Provided further, that any building hereafter erected in any block on any street or avenue in the residence section of the city must have its front building line at the average back from the street as the front line of the buildings already built in any such block."

"Section 2. That wherever any lots are laid off by any plat, showing a frontage for said lots on any street or avenue in the residence section of the city all buildings erected on same, shall keep their frontage on said street or avenue so as to conform to the frontage of the lots shown on any such plat."

"Section 3. Before any building is constructed a permit shall be obtained from the building inspector, and it shall be the duty of the said officer before issuing said permit, to require that the provisions of this ordinance shall be fully observed."

"Section 4. That any person or corporation violating the terms of this ordinance shall be subject to the penalty prescribed in the original ordinance hereby amended."

On February 23, 1903, the plat of what is known as Alexander's Park

Addition to the City of Dallas and which is located within the corporate limits of the City of Dallas, was filed and recorded in the plat records of Dallas County, Texas, showing blocks A, B, C, and D, and dedicating the streets and alleys therein outlined. On February 21, 1913, the respondent J. W. Halsell and his associates purchased what was then known as block D of said addition. This property (block D) was then unimproved and was situated in a residential district of said city and was desirable as residence property; but the block was irregular in shape and too large for one block of residence property, its sides measuring 534, 578, 598 and 784 feet, respectively. On the southeast side of block D was Munger Avenue, on the southeast side was Carroll Avenue, on the northwest side was Elk Drive, and for about two-thirds of the distance on the northeast side was Annex Avenue, and none of these streets have been changed, and no attempt has been made to change any of these streets. Block C of the said addition was and is situated northeast of block D, and is bounded by the said Annex Avenue, Harry Avenue, Prairie Avenue, and Munger Avenue. Block D, as per said plat of 1903, was divided into five lots, running through said block and fronting on Munger Avenue and Elk Drive. Block C, as per said plat of 1903, was and is divided into twelve lots, Nos. 1 to 6 fronting on Munger Avenue, and Nos. 7 to 12 fronting on Harry Avenue, and the property of complainants being a lot 67 2/10 feet fronting on Harry Avenue by 200 feet deep, and being part of lot 12 out of the corner of said block C, and at the intersection of Annex Avenue and Harry Avenue. Said lot is well improved, the residence thereon facing Harry Avenue, and was on said lot when complainants purchased same. About August 1, 1913, the said Halsell and associates prepared a plat for the subdivision of said block D, dividing said block into two blocks, numbered 1 and 2, by dedicating and opening an avenue designated as California Avenue, running from Munger Avenue to Elk Drive, parallel with Annex Avenue and Carroll Avenue, and dividing that portion of said block D situated northeast of California Avenue and known as block 1 into thirteen lots, with two of said lots fronting on Munger Avenue and the remaining eleven of said lots fronting on said California Avenue; said proposed plat and subdivision being designated as the Bergfield Addition or subdivision of block D or Alexander's Park Addition to Dallas, was submitted to the street commissioner of the City of Dallas for his approval, and said commissioner refused to approve said proposed addition of subdivision, and ordered that said plat be changed so as to extend Harry Avenue southwest to said California, thus dividing said proposed block No. 1 into two blocks, to be numbered 1 and 2, and the block southwest of California Avenue to be numbered 3, and under protest, but said protest does not appear of record, the said Halsell and his associates (incorporated), by the president and secretary of said corporation, executed a certificate of dedication with plat attached in conformity with the orders of said street commissioner, and on October 4, 1913, said plat and certificate of dedi-

cation was recorded in the plat records of said county, and said certificate of dedication is as follows: The State of Texas. Know all men by these presents: That the Bergfield Building and Investment Company, a Texas corporation, domiciled at Dallas, Texas, does hereby adopt the foregoing map as a true and correct representation of "Bergfield Place," a subdivision of block D668, Alexander's Park Addition, Dallas, Texas, and hereby dedicates for the use and benefit of the public forever the streets and alleys shown thereon, this the 16th day of August, 1913." This plat shows that the southwest end of block 2 in said subdivision is divided into two lots numbered 5 and 6 and fronting on Harry Avenue (being that portion of Harry Avenue extended from Annex Avenue to California Avenue by order of said street commissioner); the fronting of these lots on Harry Avenue, rather than on California Avenue, was one of the changes required by said street commissioner as a condition to his approval of said subdivision or addition.

In September, 1913, complainants, with knowledge of the foregoing facts and believing that the owners of said lots 5 and 6 would be required to front their houses, which might thereafter be constructed on Harry Avenue, acquired by purchase certain vendor's lien notes against the above described part of lot 12 in said block C directly across the street from lot 5, and thereafter acquired said part of said lot 12 by purchase on August 29, 1914.

More than two-thirds of the lots on Harry Avenue are platted so as to front on Harry Avenue, and all of the houses that have been constructed on Harry Avenue except at the northeast end of said block 1 have been constructed so as to front on Harry Avenue. All the improvements on Harry Avenue were made prior to May 27, 1915. According to said plat of August 16, 1913, said subdivision of said block D is divided into blocks 1, 2, and 3; block 1 is divided into six lots fronting on California Avenue, and two houses have been constructed on said lots and front on California Avenue, and there is no other way for the houses on the remaining of said lots to front than on California Avenue; said block 2 was divided into six lots, two fronting on Munger Avenue, two on California Avenue, and two on Harry Avenue; said block 3 was and is divided into nineteen lots, three fronting on Munger Avenue, six on Carroll Avenue, and ten on California Avenue, and nine of these can not front any way except on California Avenue, and eight of these have houses fronting on California Avenue.

About May 27, 1915, the said Halsell and his associates petitioned the Mayor and Commissioners of said City of Dallas for permission to amend the above mentioned plat and subdivision of date August 16, 1913, by dividing said lots 5 and 6 fronting on Carroll Avenue into three lots to be numbered 5, 6, and 7, and to front California Avenue, and on May 31, 1915, upon recommendation of the street commission of said City of Dallas, said petition was granted and approved by the Mayor and Board of Commissioners and said approval was duly entered upon the minutes of said Board of Commissioners.

On June 10, 1915, the said Halsell and his associates (the Bergfield Building & Investment Company), under the direction of the board of directors of said corporation, executed and filed in the plat records of said county an amended plat and dedication of said subdivision ·of block D, amending said plat of August 16, 1913, by dividing said lots 5 and 6 into three lots numbered 5, 6, and 7, and designating as fronting on California Avenue in accordance with the authority granted by said Board of Commissioners as aforesaid.   On December 22, 1915,. the said Halsell and his associates applied to and received from the building inspector of said City of Dallas a building permit for the construction of a five-room frame cottage on lot No. 5 on California Avenue, and proceeded toward the construction of a house in accordance with said permit fronting on said California Avenue, and while engaged in the construction of said house, application was made to the Hon. Kenneth Foree, judge of the Fourteenth District Court of Dallas County, for a restraining order to prevent the construction of any house on said lot which would front on California Avenue, and on the 15th day of January, 1916, after hearing the petition of complainants, the answer of respondents and the evidence, the court granted a restraining order, enjoining the said Halsell and his associates, their agents and representatives from further proceeding with any further building or improvements on lots 5 and 6, in block 668, of the City of Dallas (being the lots designated on said plat of August 16, 1913, and fronting on Harry Avenue), except in so far as such improvement may conform to the frontage of said lots on Harry Avenue as originally platted.   The said lots 5, 6, and 7, as per said last amended plat, run through from California Avenue to Annex Avenue, and the rear end of any house constructed on any of said lots would be pointed toward the side of the house owned by complainants, and would depreciate the value of complainants' property, to the extent of from $400 to $1000, and would depreciate the value of other property fronting on Harry Avenue and lying northeast from Annex Avenué in proportionate amounts.   The rear end of any house constructed on lots 6 or 7, block 2, as per said plat of August 16, 1913, would point to the side of the house heretofore constructed on lot 4 fronting on California Avenue, and would depreciate the value of said lot 4 and the improvements thereon, and would depreciate the value of the several lots with houses thereon on the southwest side of California Avenue whose fronts would be toward the side of such house.   The house on said lot 4 is the property of respondents at this time.   If the respondents are permitted to use their property known on the plat of 1913 as lots 6 and 7 and on the amended plat of 1915 as lots 5, 6, and 7 so as to front on California Avenue, said property would be worth to them about $1250 more than it would be worth if they should be denied the right to front the houses to be constructed thereon toward California Avenue.   California Avenue is a wider street than any of the other streets mentioned, and · has been paved and ornamented at large expense to the respondents.   The·com-

plainants had no notice of the application of respondents for permission to amend their plat in May, 1915, and knew nothing of said application nor the action of the street commission and Board of Commissioners of Dallas until several months thereafter.   There is nothing in any of said plats or dedications to indicate the direction in which the lots or houses to be erected thereon are to front, except the outlines of the blocks, lots, streets and alleys as shown on the recorded plats.   There has never been any contractual relation between complainants and their vendors on the one hand and respondents and their vendors on the other hand as to the direction in which any house or lot should front.   The property of respondents and their vendees in said Bergfield Place Addition, to whose financial interest it is to front the houses on California Avenue, is across the street from the property of complainants and their neighbors, whose interest is similar to complainants, and to whose financial interest it is to front the houses on Harry Avenue, and by reason of its new platting in 1913 and again in 1915, is recognized as a different addition, but all is part of the original Alexander's Park Addition.   The fronting of the houses in controversy, as required by the restraining order, would cause about the same depreciation in value and damage to the remaining property on California Avenue as would the fronting of said houses on California Avenue cause to the remaining property on Harry Avenue.   All the lots in the Bergfield Place Addition that have been sold by respondents have been sold with reference to the plat of August 16, 1913, as reflected by private plat Exhibit "C"; and also all the lots in said addition that have been improved by respondents are with reference to the plat of August 16, 1913.

The day the application for the temporary injunction was set down for hearing the district judge before whom the proceeding was pending, after the introduction of the evidence, granted the writ and the appellants perfected an appeal to this court.

The members of this court disagree upon issues of law arising upon the appeal material to a decision of the case, and we deem it advisable to certify the questions set out below to the honorable Supreme Court of Texas for adjudication.

Question 1.   Was the enactment of section 3 of article 1 of the charter of the City of Dallas and the passage of section 2 of the ordinance constituting a part of what is known as the Building Code of the City of Dallas, which provides "that wherever any lots are laid off by any plat, showing a frontage for said lots on any street or avenue in the residence section of the city, all buildings erected on same shall keep their frontage on said street or avenue so as to conform to the frontage of the lots shown on such plat," a valid exercise of the police power of the State and said city?

Question 2.   If the enactment of the provision of the city's charter and the passage of section 2 of the ordinance referred to in the foregoing question were a valid exercise of the police power of the State and City of Dallas, then since the appellees purchased their said prop-

erty after appellant Halsell and associates had, by map or plat, with certificate of dedication attached, placed of record, extended Harry Avenue to California Avenue and subdivided their originally proposed block numbered 1 and 2 and fronting lots 5 and 6 of said block 2 on Harry Avenue, and before the Board of Commissioners of the City of Dallas by resolution adopted permitted the said Halsell and associates to amend and change said map or plat so as to front said lots 5 and 6 on California Avenue, did said Board of Commissioners have the legal right to authorize or permit such change in the plat of said subdivision, without notice to or consent of the appellees, if such change materially damaged their property? Or was said city, by reason of having ordered the extension of Harry Avenue to California Avenue and the fronting of said lots 5 and 6 on said Harry Avenue, and the acceptance of the dedication of the streets shown by the plat in accordance with such order and placed of record, estopped to legally authorize a change of said plat in May, 1915, so as to front said lots on California Avenue?

Question 3. Was the District Court authorized, regardless of how the foregoing questions, or either of them, should be answered, to grant the temporary injunction prayed for by appellees for the reason that appellant Halsell and associates had platted the subdivision in question fronting lots 5 and 6 on Harry Avenue, and caused a map thereof to be recorded and accepted by the City of Dallas, and appellees had purchased their property likewise fronting on said avenue with reference to such platting and map, believing the frontage of said lots would remain on said Harry Avenue?

Question 4. Under the facts stated, did the District Court err in granting the temporary injunction in this case?

The sections of the charter and of the building code ordinance mentioned in question 1 are attacked as unconstitutional upon the ground that they do not come within the police power.

In so far as material here, the charter section merely requires the owner in platting property within the limits of the city into blocks and lots to conform to abutting streets and lots; while the ordinance section merely requires that buildings conform their frontage to the frontage of lots, whenever the lots are so platted as to show a frontage on any street or avenue in the residence portion of the city.

Since these regulations appear reasonable, and since they promote the general convenience and the public welfare, we can not regard them as subject to attack on constitutional grounds.

Coming within the police power, appellants have to submit to these regulations, without regard to compensation. For, as announced in section 442, Corpus Juris, volume 12, page 931: "Since the very foundation of the police power is control of private interest for the public welfare, a statute or ordinance is not rendered unconstitutional by the mere fact that private rights of person or property are subject to restraint or that loss will result to individuals from its enforcement."

We answer "Yes" to question 1.

The facts recited in questions 2 and 3 precluded and estopped the city and appellants from changing the frontage of appellants' lots from Harry Avenue, and from erecting a residence thereon otherwise than in conformity to the frontage on Harry Avenue.

The principles announced in Harrison v. Boring, 44 Texas, 266-273, compel the conclusion that when appellees purchased their property in reliance on the representations embodied in the plat filed by appellants and approved by the city, the property of appellants became impressed with easements or servitudes, of which appellees or their assigns could not be deprived without their consent.

It would hardly be denied that appellees would be entitled to relief if appellants were seeking to deprive appellees of the benefits accruing from the dedication, by appellants' plat, of the extension of Harry Avenue. We see no reason to apply a different rule to the attempt to deprive appellees of the valuable benefits. accruing from the frontage given by the plat to appellants' lots.

The facts certified present every essential element of an estoppel. It is certain that the plat of 1913 embodied a representation with respect to the subdivision of appellants' property which is entirely inconsistent with the rights now asserted. If it be said that appellants did not intend a purchaser from another of adjacent property on Harry Avenue to act on the plat, it can not be maintained that such purchaser might not reasonably accept the representation of the plat as true and act thereon. The certificate shows that appellees did make their purchase in reliance on the plat and that they will suffer substantial injury unless appellants are held bound by same. The city made itself, in effect, a party to the representation by adopting and filing the 1913 plat.

Hence we answer to questions 2 and 3 that the city and appellees were estopped to deny that the easements or servitudes, for the benefit of appellees, which were represented or shown by the 1913 plat, attached to appellants' property.

It follows that under the facts stated the District Court did not err in granting the temporary injunction, and this answers question 4.