## CITY OF DALLAS et al. v. MITCHELL.*
(No. 8952.)

(Court of Civil Appeals of Texas, Dallas. Nov. 25, 1922. Rehearing Denied Dec. 22, 1922.)

1. Constitutional law ⊚⇒87—Building permit ordinance violative of constitutional right of a citizen to use property as he sees fit.

Ordinance, requiring a hearing at which all persons residing within 300 feet of proposed building shall be notified to appear and testify before issuance of building permit, *held* violative of the constitutional right of a citizen to use his own property as he sees fit so long as it does not interfere with the rights of others.

### On Motion for Rehearing.

2. Civil rights ⊚⇒1—Rights of individual are not derived from governmental agencies or from Constitution, but exist inherently.

The rights of the individual are not derived from governmental agencies, either municipal, state, federal, or even from the Constitution, but they exist inherently in every man, and are merely reaffirmed in the Constitution and restricted only to the extent they have been voluntarily surrendered by the citizenship to the agencies of government.

3. Municipal corporations ⊚⇒621—Issuance of building permit not discretionary with building inspector.

Under an ordinance providing for the issuance by the building inspector of building permits, an application for a permit was not addressed to the discretion of the inspector, but he could reject application only where specifications did not comply with the definite, certain, and established terms of the ordinance.

4. Municipal corporations ⊚⇒121—One not estopped from questioning validity of ordinance by endeavoring to comply therewith.

A person was not estopped to question the validity of an ordinance merely because he endeavored to comply with its provisions in attempting to prescribe a building permit.

5. Constitutional law ⊚⇒81—Where no conditions exist, and public health, safety, and morals are not endangered, an owner may deal with his property in accordance with his own free will.

Property may be restricted to a certain kind and character of improvements by conditions in a deed of conveyance by dedication or by mutual agreement of all owners in which all parties affected have notice, but where no such conditions exist and the public health, safety, and morals are not endangered, an owner may deal with his property in accordance with his own free will.

Appeal from District Court, Dallas County; Royall R. Watkins, Special Judge.

Suit by C. S. Mitchell against the City of Dallas and others, to have an ordinance declared void and a writ of mandamus and a writ of injunction. From a judgment directing the issuance of the mandamus and the injunction, the defendants appeal. Affirmed.

J. J. Collins and Allen Charlton, both of Dallas, for appellants.

Thomas, Frank, Milam & Touchstone, of Dallas, for appellee.

SERGEANT, C. J. On April 29, 1922, C. S. Mitchell, appellee, who owned a lot on the southeast corner of Davis and Edgefield streets in the city of Dallas, fronting 60 feet on Edgefield and 150 feet on Davis, applied to the board of commissioners of the city of Dallas, appellants, for a permit to erect thereon a brick building to be divided into sections and used for grocery and drug stores. It was shown that the building pro-

---

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error refused February 7, 1923.

posed would conform to the city ordinances relative to distance from property line and the direction to be faced; that the building plans were submitted to the city building inspector and approved by him, and that the proposed uses of the building were the same as that of other like buildings used for similar businesses. The board of commissioners set a day for hearing the application, notified all interested parties, including all persons residing within a radius of 300 feet of the proposed location, many of whom were present and objecting, and on such hearing declined to issue the permit.

Appellee appealed from the ruling of the board of commissioners to the board of appeals or review, which body upheld the decision of the former board. Appellee thereupon instituted suit in the district court of the Fourteenth judicial district of Texas against the city of Dallas, its board of commissioners, building inspector, chief of police, and city attorney, seeking to have declared void Ordinance No. 742 of the city of Dallas, under the terms of which ordinance said city had refused the granting of the permit, and for a writ of mandamus, commanding the defendants to issue a building permit to him, and for an injunction to restrain the defendants from interfering with the erection by him of the proposed building. On hearing the court granted petitioner the relief prayed for, and directed the issuance of the mandamus and the injunction as prayed. From this ruling appellant brings the case to this court by appeal.

The appeal involves the validity of Ordinance No. 742 of the city of Dallas, known as the building ordinance. A former building ordinance of said city contained in articles 1965 to 1967 of the Revised Ordinances of the city of Dallas, dealing with this same subject, was declared void and unconstitutional by the Supreme Court of Texas on November 2, 1921, in the case of Spann v. City of Dallas, 235 S. W. 513. Thirty days thereafter the present ordinance was enacted, intending to circumvent the decision of the Supreme Court on the former ordinance. But in our opinion it has failed to do so.

The present ordinance requires a hearing at which all persons residing within 300 feet of the proposed building shall be notified to appear and testify, thereby making the granting of the permit subject to the wishes, whims, and caprices of appellant's neighbors. On this very ground, as well as on others, the Supreme Court in the case above referred to declared the former ordinance invalid.

Again, in the instant case the board of appeals in rejecting the application for a permit declared that it did so because the health, safety, and welfare of the community would be endangered should the building be erected. While the testimony before them showed that immediately across the street there had been for some years, and still was, a chain of stores dealing in drugs, groceries, meats, cold drinks, and the like and that no complaint had been made that any of these stores had been offensive, nor had the city attempted to declare a nuisance existing there by reason of the existence of danger to the public health, safety, or welfare, the Spann Case specifically says:

"It is idle to talk about the lawful business of an ordinary retail store threatening the public health or endangering the public safety."

And on the specific ground that this very character of business does not, in itself, endanger the health, safety, morals, or welfare of the community, the Supreme Court declined to uphold the former ordinance.

[1] It is unnecessary for us to go into an extended discussion of this case. Practically every issue in it was decided in the Spann Case adversely to appellant. And the reasons therefor were fully set out in that decision. The present ordinance in its ultimate effect and in its final analysis violates both the inherent and constitutional right of a citizen to use his own property as he sees fit, so long as it does not interfere with the rights of others. It is an abuse of the police power of the state. It invades the fundamental liberties of the citizen. It is not founded on public necessity, nor does the proposed use of the building endanger the public safety, health, morals, or welfare. Therefore such ordinance cannot stand. Should a building of the kind in question be put to an improper and unlawful use after its erection, such use can be prevented by application of the proper legal remedies. As the ordinance in question is void, the trial court did not err in granting the writs of mandamus and injunction and its judgment is therefore affirmed.

On Motion for Rehearing.

Were it not for the fact that the motion for rehearing discloses that appellants have apparently misunderstood our original opinion, we would have deemed it unnecessary to write further on this subject, as we had felt that the issue determined disposed of the entire case.

[2] Our theory of government and governmental powers is wholly at variance with that urged by appellant herein. The rights of the individual are not derived from governmental agencies, either municipal, state or federal, or even from the Constitution. They exist inherently in every man, by endowment of the Creator, and are merely reaffirmed in the Constitution, and restricted only to the extent that they have been voluntarily surrendered by the citizenship to the agencies of government. The people's rights are not derived from the government, but the government's authority comes from the peo-

245 S.W.—60

ple. The Constitution but states again these rights already existing, and when legislative encroachment by the nation, state, or municipality invade these original and permanent rights, it is the duty of the courts to so declare, and to afford the necessary relief. The fewer restrictions that surround the individual liberties of the citizen, except those for the preservation of the public health, safety, and morals, the more contented the people and the more successful the democracy.

The only portion of Ordinance 742 of the city of Dallas which we declare unconstitutional is that part relative to the securing of permits for the erection of business buildings in the residence sections of the city. Those sections of the ordinance dealing with securing of permits for the erection of billboards in residence sections; the securing of permits for the establishment of certain named businesses in residence sections as set out in section 5, such as livery stables, tanneries, glue factories, etc.; the fixing of building lines; the segregation of the white and black races; and the securing and recording of agreements regarding the use of property—are not in any way presented or involved in this suit, and consequently we have made no holding whatever as to the validity or invalidity of such portions of the ordinance.

[3] The trial court directed the issuance of the permit by appellant to appellee upon the latter's filing plans and specifications with the building inspector of the city of Dallas; and the affirmance of the judgment of the trial court necessarily involves the sustaining of such court's position, and necessarily constitutes a finding that the specifications have not been filed, but that they should be, as a condition precedent to the issuance of the permit. But the building inspector cannot arbitrarily refuse the permit if the specifications do not please him, but only in the event they distinctly and positively violate the valid provisions of the Building Code. It is only necessary that they comply with the definite, certain, and established terms of the ordinance. They are not subject to rejection at the discretion or pleasure of the building inspector.

The validity of the ordinance creating a board of appeals for review of the decisions of the board of commissioners granting or denying building permits we do not pass upon, as this question was not presented in the original appeal. And necessarily the authority of that body and the validity of its acts are not property under consideration here. The board of appeals was not a necessary party to this suit; the city of Dallas alone, without the joinder of any of the other defendants, being sufficient. The facing of the building on Edgefield street as required by the city ordinance is a sufficient compliance therewith, regardless of the number of openings or entrances from Davis street into the various sections of the building.

[4] Appellee was not estopped to question the validity of the ordinances merely because he endeavored to comply with its provisions in attempting to procure a building permit.

[5] Property may be restricted to a certain kind and character of improvements by conditions in a deed of conveyance, by dedication, or by mutual agreement of all owners in which all parties affected have notice. But where no such conditions exist and the public health, safety, and morals are not endangered, an owner may deal with his property in accordance with his own free will. The rights of the individual man are not subject to impairment in the manner provided by that portion of the ordinance involved herein.