### CITY OF DALLAS v. DAVIS. (No. 108.)

(Court of Civil Appeals of Texas. Waco. Nov. 20, 1924.)

**1. Municipal corporations ⬤⟳601—Ordinance held not to prohibit erection on rear of corner lot of building fronting on side street.**

Ordinance requiring buildings on residence lots to conform to lot frontage *held* applicable only to principal buildings, and not to plumbing shop on rear of corner lot after dwelling had been erected facing main street.

**2. Appeal and error ⬤⟳842(1)—Conduct barring equitable relief to corner lot owner against city seeking to prevent erection of building fronting on side street held fact question for trial court; "remodeling."**

Whether corner lot owner was guilty of inequitable and unlawful conduct, barring equitable relief against city seeking to prevent him from completing store building fronting on side street, in contending that he was only remodeling barn, *held* fact question for trial court, in absence of evidence that "remodeling," which means, broadly, "to reform, reshape, to make over in a somewhat different way," has different meaning in particular trade. Rev. St. art. 5502.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Remodeling.]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Suit by A. P. Davis against the City of Dallas. Decree for plaintiff, and defendant appeals. Affirmed.

James J. Collins and Allen Charlton, both of Dallas, for appellant.

Leake & Henry, F. L. Peyton, Jr., and Claude M. McCallum, all of Dallas, for appellee.

SPIVEY, J. This is a suit by appellee against the city of Dallas to restrain the latter from preventing appellee from completing a certain wooden building upon a lot owned by him, and from preventing plaintiff from opening and maintaining therein a retail plumbing shop, and for mandamus to compel the city, through its proper officer, to issue to him a permit to complete said building, and a permit to carry on said business therein.

Appellant pleaded, among other defenses, one of its ordinances providing, "that wherever any lots are laid off by any plat showing a frontage for said lots on any street or avenue in the residence section of the city, all buildings erected on same shall keep their frontage on said street or avenue so as to conform to the frontage of the lots shown on any such plat"; and presents the proposition that because of such ordinance "a property owner is not entitled to have a decree of court awarding him a writ of injunction or a writ of mandamus enabling him to complete a building facing or having a frontage in violation of the terms of said ordinance." This is the same ordinance quoted as section 2 in Halsell v. Ferguson, 109 Tex. 144, 202 S. W. 317; and carries a penalty for its violation. On the trial before the court the relief prayed for was granted, but the writs of injunction and mandamus were ordered not to issue until this appeal could be heard.

[1] If the ordinance quoted above is to be interpreted literally, it would mean that each and every building erected on the lot must keep its frontage on the street the lot fronts on—in this instance Josephine street—regardless of its character. It is a matter of common knowledge that residences have appurtenant to them such outhouses as barns, servant's house, garage, and such like. Hence we think the ordinance was intended to give direction for the location of the residence proper, and means that such residence should be erected on the front end of the lot; and, while it does not appear from the ordinance to have been contemplated that a business house would ever be erected upon a residence lot, yet, should there be one in place of a residence, it should likewise conform to such purpose and intention; but that, when the spirit of the ordinance has been complied with fully by the proper location of the residence, there could not be any intention that other buildings should come within the terms of the ordinance, and, also, that, having complied with the ordinance in this respect, the lot owner could thereafter make such reasonable use of the residue of his lot as would not come within the pale of such uses as are denominated nuisances per se, or those which become such by reason of locality and manner of use. The purpose underlying the ordinance was to provide a situation of symmetry and orderliness to the end that neighbors and persons residing in the vicinity, and persons owning property therein, and persons

⬤⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

using the streets, might not be compelled to view such outhouses by reason of being placed in a prominent or conspicuous location when they are ordinarily located àt the rear of the lot, or at least in such place as not to unduly affect the sensibilities of ordinary persons; and that persons owning contiguous property might not have it subjected to depreciation in value and undesirability by the erection of houses at random and without regard to order and symmetry. This is a rational construction of the ordinance, we think, and is as favorable to appellant and its inhabitants as they could ask.

After a street through a block has been improved, with all principal buildings facing the same direction, it certainly cannot be said that order and symmetry have been destroyed or affected by erecting a building on the rear of any such lot and fronting it upon another street running at right angles; nor can it be said that the property of any person in the block, or elsewhere in the vicinity, could be injured in so doing; nor can it be said that any person owning a corner lot, and who has complied with the plan of the block by facing his principal building in accordance with such plan, may not then utilize the value and advantage of such corner lot and the street running at right angles for such reasonable building purposes as may suit him and his means. To prohibit the owner of any such lot from utilizing its advantages would constitute an invasion of his right of property, and that, too, without any attendant injury to the legal rights of others. An ordinance should not be so construed when it can be avoided.

The lot in question is situated in the residence portion of the city of Dallas, outside of the fire limits, and was purchased by plaintiff about six months before the trial, which was had on December 11, 1922. The lot is 150 by 152 feet, and appears to have had thereon at the time plaintiff purchased, a residence and a "red barn."

The lot is a corner lot, situated in the southeast corner of the intersection of Worth street, which runs about east and west with Josephine street, which runs about north and south. The residence is situated in the northwest corner of the lot, and occupies less than half the lot from east to west, and has a door or doors opening towards Josephine street, and also a door opening towards Worth street, the main entrance being from Worth street. It does not appear whether there is any "side entrance" or other entrance from Josephine street. The red barn was located at the northeast corner of the lot, with its north side immediately on Worth street and its east end immediately on the line of the alley running north and south between plaintiff's property and the property on the east side of the alley. This barn was 26 feet on Worth street by 16 feet back, and opened

266 S.W.—35

north on Worth street, and had been there for as much as twelve years at the time of the trial; but the evidence does not show how long the residence has been built, except that it was prior to the time plaintiff purchased.

The incidents which led to the suit were briefly as follows: In pursuance of an ordinance plaintiff first applied to the city for a permit to erect "two small stores" at "No. 4210 Worth street," which proposed building was intended, as recited in the application, to be used for plumbing and gas fitting and grocery. The ordinance under which the permit was asked required the application to state the general character of the buildings surrounding same within a radius of 300 feet from the proposed structure, and these were stated in the application to be wooden frame dwellings. The ordinance also required that there should accompany the application the names and addresses of the heads of all families residing within such radius and the names and addresses of all property owners owning property within such radius, and this information was given along with the application. It asked for a permit for the erection of the building, or, in lieu thereof, that a public hearing be had thereon and permit issued thereafter. This ordinance constituted the mayor and board of commissioners of the city a tribunal to hear such application at such public hearing, and also created a board of appeal or review, to which appeal may be taken either by the applicant or any two property owners owning property in the above-mentioned area. Notices were required to be issued by the city secretary to the above householders and lot owners, or, in lieu thereof, notice might be given upon order of the mayor and board of commissioners by public notice in the official organ of the city for a prescribed length of time, and like provisions were made for notices in case of appeal, and these two boards were given the power to summon witnesses, compel their attendance, and prescribe rules governing their deliberations, and to determine, after and upon such hearing, whether a permit should be granted or not. The portion of this ordinance relating to the public hearing, issuing of notices, summoning witnesses, and granting of permit thereafter and thereon was declared void and unconstitutional by the Supreme Court in Spann v. City of Dallas, 111 Tex. 350, 235 S. W. 513, 19 A. L. R. 1387, and by the Court of Civil Appeals in City of Dallas v. Mitchell, 245 S. W. 944, in which writ of error was refused.

The above-mentioned application, after a public hearing before the mayor and board of commissioners, was refused, and applicant appealed to the board of appeals or review, where his application was heard, and thereupon the board of appeals or review made the following order:

"After all interested property owners had been heard, Mr. Davis asked permission to withdraw his application, which was granted by the board of appeals or review."

Thereafter there was issued to appellee the following permit:

"Building Permit.

"Dallas, Texas, September 5, 1922.

"Mr. A. P. Davis is hereby permitted to erect —remodel barn, lot No. 4, block A/798, house No. 522, street Josephine, estimated cost, $400.00, and to be completed in thirty days. Penalties apply for unlawful use of streets (see building ordinances) clear for gutters and use of fire plugs. Sidewalk must be kept open for passage and protected overhead. Building line must be maintained (see ordinance). This permit must be kept on the job. No debris placed on street.      [Signed]    B. C. McCord,
"Building Inspector."

No question appears to be made by the parties of there being any difference in the location between "4210 Worth street" mentioned in the foregoing application and "lot No. 4, block A/798, house No. 522, street Josephine" mentioned in the foregoing permit; and from the testimony they appear to relate to the same location.

Under this permit appellee began the erection of the house in controversy, which is 24x24 feet. It is set back some 5 or 6 feet from the line of Worth street and about the same distance from the line of the alley, but otherwise takes up the space occupied by the red barn. He tore down all of the building except the north and east walls of the barn, and used this lumber as far as practicable in building the storehouse, and intended to use the lumber in the north and east walls for the same purpose and to the same extent. He had gotten the new building partly up—cement floor and part of the walls and the overhead covering—when work was stopped by the building inspector, who testified that he received a complaint from that neighborhood, and went out and looked at the improvements that were being erected, and stopped the work because, as he construed it, appellee was not remodeling a barn, but was building a new structure.

There is a further fact in the case as to the frontage of the proposed building, which is that plaintiff has a door and window opening towards Josephine street; and intends, if allowed to finish the building, to have a door and show windows fronting Worth street. The building is not shown to be fenced off from the street, and plaintiff testified that customers would have access to the building from the Josephine street side as well as the Worth street side; that as many could come in one way as the other, but that customers would be invited to enter from the Worth street side, and that he ex-

pected to have a sign placed in front of or over the door of the Worth street side. Under these facts the trial court could have properly found that a frontage was kept on Josephine street. But we do not care to rest our decision upon this feature.

Treating the above-quoted ordinance as valid, the issue in the case is whether or not plaintiff, having erected his residence so as to comply with the terms of the ordinance as to frontage, can now erect a storehouse on the rear of his lot and front it on the street running at right angles to the street the lot fronts on? It is a corner lot, and as such is more convenient and valuable than an inside lot. Such additional convenience and value could not be used by plaintiff to the full extent of his rights therein if he could not avail himself of these advantages as to the residue of his lot after satisfying the requirements of the ordinance as to location of his residence.

Again, after satisfying the requirements in such manner, we do not think it can be said that he has injuriously affected the legal rights of any located south of him on Josephine street or on the opposite side of Josephine street, or across Worth street from him, or east of him on the same side of Worth street; nor can the city, as a trustee of the public or in other capacity, successfully maintain that such lot owner cannot avail himself of the advantage of a corner lot by fronting a building on the street on which the lot does not front, after such lot owner has complied with the terms of the ordinance in the location of his residence, as plaintiff has done in this instance. We cannot see any reason for a valid complaint by reason of the facts of this case on the part of either the city or its inhabitants, and no legal or valid complaint is shown in the record.

The defendant's building inspector did not stop the work because the building did not face Josephine street, but stopped it, he states, because plaintiff was not remodeling his barn, but was building a new building. No witness testified that the building itself would decrease the value of property in the neighborhood, though one witness testified that as a business house it would, while another testified that it would not, but would enhance it.

One of the objections shown by the testimony to the location of the proposed building was that it would increase congestion of traffic at that particular place because automobiles would stop at such building for the purpose of loading and unloading, Worth street being already congested. However, if the building were made to front on Josephine street, and there should be a side entrance from Worth street, this would also increase congestion from the same cause. Such side entrance is not violative of the or-

dinance. City of Dallas v. Mitchell (Tex. Civ. App.) 245 S. W. 944.

In that case the owner of a corner lot fronted his building as required by ordinance, and also provided entrances from the street at the side of the building. It was said by the court that "the facing of the building on Edgefield street as required by the city ordinance is a sufficient compliance therewith, regardless of the number of openings or entrances from Davis street (the side street) into the various sections of the building." It may be said also in this connection that, if plaintiff's building were moved nearer to Josephine street, which clearly he would have the right to do, and front it on said street with a side entrance, some congestion might exist. Also from some of the testimony it is made to appear that the erection of the proposed building in the place of the "red barn" will increase the fire hazard. So might a larger barn or a residence; but no one would seriously contend that plaintiff could not erect either of these. It is claimed also in the evidence that by reason of the location of the building so near the alley there would be more danger to pedestrians passing along Worth street from automobiles coming unexpectedly out of the alley, but it seems to us that such threatened danger is obviated by the setting back of the building from the alley.

After a careful study of the record we cannot escape the distinct impression that, after all, the real objection to the building is that it is to be used as a business house located in a residence district. We think that none of the above objections are sufficient to overcome the superior rights of the plaintiff, which are enumerated and fully discussed in the cases of Spann v. City of Dallas, 111 Tex. 350, 235 S. W. 513, 19 A. L. R. 1387; Hill v. Storrie (Tex. Civ. App.) 236 S. W. 234; City of San Antonio v. Salvation Army (Tex. Civ. App.) 127 S. W. 860; City of Dallas v. Mitchell (Tex. Civ. App.) 245 S. W. 944; and Crossman v. City of Galveston, 112 Tex. 303, 247 S. W. 810, 26 A. L. R. 1210.

Appellant cites and relies upon Halsell v. Ferguson, 109 Tex. 144, 202 S. W. 317, holding that said article 2 of its ordinance is a valid delegation of the police power of the state. If the ordinance has been correctly interpreted by us herein, appellee has complied with that ordinance to all intents and purposes in the erection of his residence on the front of his lot; and, having done so, now has the right to front his proposed building on Worth street.

[2] Appellant also assigns error in that plaintiff is seeking writs of injunction and mandamus, and that such writs are extraordinary matters, governed by equitable principles, and that from plaintiff's petition and from the evidence and pleadings it clearly appears that the conduct of plaintiff in regard to the subject-matter is inequitable and unlawful, and hence that plaintiff does not come into court with clean hands so as to entitle him to such equitable relief.

The assignment raises questions of fact. Plaintiff testified that he explained to the building inspector what he desired and intended to do, and this is not denied by the latter. Hence we cannot say that any deception was practiced upon appellant. Plaintiff contended that he was but remodeling his barn; the inspector contended that he was not. We cannot say as a matter of law that either was right or wrong under the facts of this case. "Remodeling" seems to be a word of broad meaning. Among other definitions, it means "to re-form, re-shape, to make over in a somewhat different way." There was no evidence introduced showing that the word had a particular and different meaning when applied to a particular trade. R. S. art. 5502. Illustration could be given under which a court could says as matter of common knowledge that a certain state of facts did or did not, as the case might be, constitute remodeling; but such is not the case here. In this instance it was for the trial court, under the facts adduced, to determine the question, and there is sufficient evidence to support the finding in favor of his judgment.

Finding no error, the judgment of the trial court is affirmed.