HOWDEN *v.* MAYOR & ALDERMEN OF SAVANNAH.

834

No. 7966.    JUNE 11, 1931.

838

*Hitch, Denmark & Lovell,* for plaintiff.
*John J. Bouhan,* for defendant.

HINES, J.   (After stating the foregoing facts.)

■   Section 8 of the zoning ordinance of the City of Savannah provides that "only residences, apartments, churches, schools, hotels, and hospitals shall be erected on lots fronting on Forsyth Park and Extension, Monterey Square, and Jasper Square, as said lots appear upon the present official map of said city." The property of the plaintiff involved in this case is situated on the northeast corner of Park Avenue and Drayton Street. It consists of lot C and lot 15 in Cuthbert Ward. The combined property has a frontage of 70 feet on Park Avenue, and extends northward along Drayton Street 105 feet. The improvements on this property consist of a two-story frame dwelling, the entrance of which faces Park Avenue. The west side of this residence fronts on Drayton Street, which alone separates it from Forsyth Park Extension. On the rear of this property is a two-story frame outhouse, the entrance into which faces on Waldberg Street Lane, which is the northern boundary of the property. This building, like the residence, is separated from Forsyth Park Extension by Drayton Street alone. It is contended by the plaintiff that in these circumstances this property does not front upon Forsyth Park Extension, and that for this reason it does not come within the provisions of this zoning ordinance. We do not think that this contention is well founded. Any side or face of this property is the front thereof within the meaning of this provision of this ordinance. Property may front on one street only, or it may front on two streets. Where a lot, or combined lot, is a corner lot which faces on two streets, it fronts upon both of such streets. Re Dennick, 3 Ont. W. N. 1061; Waters v. Collins (N. J. Eq.), 70 Atl. 984; DesMoines v. Dawe, 31 Iowa, 89, 93. A lot which is separated from a park by a street alone fronts on such park. We are of the opinion that this property of the plaintiff falls within this provision of the ordinance.

■   In the next place it is insisted by counsel for the plaintiff that the trial judge erred in failing and refusing to find and adjudge that the effect of this zoning ordinance, if applied to her property under the facts of the case, amounted to depriving her of her property without due process of law, in violation of the due-process clauses of the constitution of this State and of the Federal constitution; and because it amounted to the taking of her property for public purposes without just and adequate compensation being first

paid, in violation of the constitution of this State. The precise question for adjudication is this: Is the denial to the owner of a residence lot located in a district zoned, by a city ordinance passed in pursuance of legislative and constitutional authority, exclusively for residences, apartments, churches, hospitals, schools, and hotels, of a permit to erect on such lot a gasoline-filling station a deprivation of her property within the meaning of the due-process clauses of the constitution of this State and of the 14th amendment to the constitution of the United States? In other words, can an owner of land be constitutionally denied the right to erect thereon a building for the conduct of a business therein, if neither the business nor the manner of its operation constitutes a nuisance? This court is committed to the doctrine that a filling-station is not per se a nuisance. *Standard Oil Co.* v. *Kahn,* 165 *Ga.* 575 (141 S. E. 643); *Thompson* v. *Texas Co.,* 166 *Ga.* 315 (143 S. E. 376); *Barton* v. *Rogers,* 166 *Ga.* 802 (144 S. E. 248); *Woolen* v. *Smith,* 167 *Ga.* 256 (145 S. E. 446); *Howell* v. *Board of Comrs.,* 169 *Ga.* 74 (149 S. E. 779). There are no facts going to show that the filling-station which the plaintiff desires to install will be so operated as to become a nuisance. *Kahn* v. *Standard Oil Co.,* 166 *Ga.* 698 (144 S. E. 241). We can not assume that it will be so operated. So the erection of a building or structure for a gasoline filling-station and the conduct of the business of selling gasoline thereat are both lawful acts. This being so, can the owner of real estate be prohibited by a zoning ordinance from erecting such structure under the facts of this case?

This court has, in several cases, passed upon the constitutional validity of zoning statutes and ordinances. In *Smith* v. *Atlanta,* 161 *Ga.* 769 (132 S. E. 66), this court dealt with the act of August 4, 1921 (Acts 1921, p. 665), which authorized the mayor and council of Atlanta to pass an ordinance "zoning the city for the purpose of regulating the location of trades, industries, apartment-houses, dwellings," etc.; and we held that this provision of that act and the ordinance passed in pursuance thereof violated the due-process clauses of the State and Federal constitutions, and were therefore void in so far as they authorized the municipal authorities to prohibit the building of stores in districts which had been established as residential sections. In that case this court declared that its decision was "not to be construed as a holding upon other

provisions of the act and the ordinance intended to allow and make zoning regulations as to structures and buildings other than stores." In *Morrow* v. *Atlanta,* 162 *Ga.* 228 (133 S. E. 345), this court made this ruling: "In so far as the zoning ordinance of the City of Atlanta, adopted April 11, 1922, seeks to deprive the owner of real estate thereafter designated as an apartment zone of the right to use his realty in the pursuit of a business recognized as lawful, such ordinance is unconstitutional and void." This decision was put upon the ruling made in *Smith* v. *Atlanta,* supra. In the *Morrow* case this court was dealing with the operation of a garage and vulcanizing plant located in a zoning district where such establishment was prohibited. The decision in *Smith* v. *Atlanta* was again approved and followed by this court in *City of Atlanta* v. *Smith,* 165 *Ga.* 146 (140 S. E. 369), where it was said: "We are satisfied with the correctness of the decision of this case when it was formerly here, and the request to review and overrule the same is therefore refused." See *Reynolds* v. *Brosnan,* 170 *Ga.* 773 (154 S. E. 264). So it appears from the decisions of this court, cited above, that zoning statutes and ordinances, which were passed prior to the adoption of the zoning amendment to the constitution of this State, and which forbade the erection of buildings for the conduct of businesses which were not per se nuisances, violated the due-process clause of the constitution of this State and the 14th amendment to the constitution of the United States.

Our decisions upon this subject are in harmony with the decisions of other courts. Formerly statutes or ordinances which sought to create residence districts from which all business buildings were to be excluded would not have been sustained as coming within the police power, and the same would have been denounced as unconstitutional and void because they deprived owners of their property without due process of law. In re Jacobs, 98 N. Y. 98 (50 Am. R. 636); People v. Chicago, 261 Ill. 16 (103 N. E. 609, 49 L. R. A. (N. S.) 438, Ann. Cas. 1915A, 292); St. Louis v. Dawe, 145 Mo. 466 (41 S. W. 1094, 42 L. R. A. 686, 68 Am. St. R. 575); Calvo v. New Orleans, 136 La. 480 (67 So. 338).; State v. Houghton, 124 Minn. 226 (158 N. W. 1017, L. R. A. 1917F, 1050); Willison v. Cooke, 54 Colo. 320 (130 Pac. 828, 44 L. R. A. (N. S.) 1030); People v. Roberts, 153 N. Y. Supp. 143; Spann v. Dallas, 111 Tex. 350 (235 S. W. 513, 19 A. L. R. 1387); Fitz-

hugh v. Jackson, 132 Miss. 585 (97 So. 190, 33 A. L. R. 279); Ambler Realty Co. v. Euclid, 297 Fed. 307; State v. McKelvey, 301 Mo. 1 (256 S. W. 474); Ignaciunas v. Risley, 98 N. J. L. 712 (121 Atl. 783); Lucas v. State (Ohio App.), 21 Ohio L. B. & R. 363; Dallas v. Mitchell (Tex. Civ. App.), 245 S. W. 944; Dallas v. Burns (Tex. Civ. App.), 250 S. W. 717; Marshall v. Dallas (Tex. Civ. App.), 253 S. W. 887; St. Louis v. Evraiff, 301 Mo. 231 (256 S. W. 489); State v. Davis, 302 Mo. 307 (259 S. W. 80); Goldman v. Crowther, 147 Md. 252 (128 Atl. 50, 38 A. L. R. 1455); Dallas v. Davis, (Tex. Civ. App.), 266 S. W. 544; State v. Thomas, 96 W. Va. 628 (123 S. E. 594); Plaza Apartment Hotel Corp. v. Hague, 100 N. J. L. 410 (126 Atl. 421); Jersey Land Co. v. Scott, 100 N. J. L. 45 (126 Atl. 173); Sarg v. Hooper (N. J. L.), 128 Atl. 376; Falco v. Kaltenbach (N. J. L.), 128 Atl. 394; Becker v. Dowling (N. J. L.), 128 Atl. 395; Plymouth v. Bigelow (N. J. L.), 129 Atl. 293; Hayes v. Blank (N. J. L.), 126 Atl. 926; State v. Houghton, 164 Minn. 146 (204 N. W. 569, 54 A. L. R. 1012).

The courts have, however, for some time been taking more and more liberal views of the zoning power; and there are cases where it was decided that the police power is broad enough to exclude business buildings from residential districts. DesMoines v. Manhattan Oil Co., 193 Iowa, 1096 (184 N. W. 823, 188 N. W. 921); In re Opinion of Justices, 234 Mass. 597, 127 N. E. 525; State v. New Orleans, 154 La. 271 (97 So. 440, 33 A. L. R. 260); State v. New Orleans, 154 La. 278 (97 So. 445); State v. Harper, 182 Wis. 196 (33 A. L. R. 269); Schait v. Senior, 97 N. J. L. 390 (117 Atl. 570); Ware v. Wichita, 113 Kan. 153 (214 Pac. 97); People v. Board, 234 N. Y. 484 (138 N. E. 416); Holzbauer v. Ritter, 184 Wis. 35 (198 N. W. 852); Zahn v. Board, 195 Cal. 497 (234 Pac. 388); Blumenthal v. Cryer, 71 Cal. App. 668 (236 Pac. 216); West v. Wichita, 118 Kan. 265 (234 Pac. 978); Spector v. Building Inspector, 250 Mass. 63 (145 N. E. 265); Brett v. Building Comr., 250 Mass. 82 (145 N. E. 269). In Miller v. Board of Public Works, 195 Cal. 477 (234 Pac. 381, 38 A. L. R. 1479), a new principle seems to have been introduced, the California court holding that "The establishment of strictly residential districts by zoning ordinances may be justified because it is for the protection of the civic and social values of the American home." Many other

decisions, which sustain the constitutional validity of zoning statutes are cited in the note in 54 A. L. R. 1031. The majority of the recent cases upon this subject uphold the constitutionality of zoning statutes and ordinances. We have cited a number of these cases and have referred above to many thereof in order to show the present judicial trend upon this subject. We do not mean to hold that the former decisions of this court upon this subject were erroneous.

This brings us to consider the bearing upon the case now sub judice of the amendment to the constitution of this State, which was proposed to the qualified voters in 1927 (Ga. L. 1927, p. 127), and thereafter adopted by them, and which provides that "The General Assembly of the State shall have authority to grant to the governing authorities of the cities of Atlanta, Savannah," and other named cities, "and cities having a population of 25,000 or more inhabitants according to the United States Census or any future census, authority to pass zoning and planning laws whereby such cities may be zoned or districted for various uses and other or different uses prohibited therein, and regulating the use for which said zones or districts may be set apart, and regulating the plans for development and improvement of the real estate therein." This amendment further gives to the General Assembly authority to authorize the cities named "to pass zoning and planning laws." So we have in the constitution as now amended both the due-process clause and this zoning provision. They must be construed together. In view of this amendment it can not longer be held that a zoning statute, which authorizes a city embraced within it, to pass a zoning and planning ordinance, is per se unconstitutional and void because it deprives the owner of real estate of his property without due process of law. This constitutional provision supersedes the decisions of this court which declared zoning statutes unconstitutional and void because they denied due process of law to the owners of real estate embraced in zoning districts. By the act of August 26, 1929, amending the charter of the City of Savannah, it is provided "that the Mayor and Aldermen of the City of Savannah shall have authority to enact zoning and planning laws whereby such city, and also its environs within the limits of Chatham County, may be zoned or districted for various uses and other or different uses prohibited therein, and regulating the uses for which

said zones or districts may be set apart, and regulating the plans for development and improvement of real estate therein." Acts 1929, pp. 1281, 1286. In view of the amendment to the constitution, the statute which authorized the City of Savannah to pass a zoning and planning ordinance is not unconstitutional and void. In pursuance of this statute the Mayor and Council of the City of Savannah passed a zoning ordinance which embraces the provision set out and dealt with in the first division of this opinion. It follows from what has been said that this provision of the zoning ordinance of said city is not per se unconstitutional and void because it deprives the plaintiff of her property without due process of law. Speaking generally, the mayor and council of said city were authorized to pass a zoning and planning ordinance. Under the constitution of this State and the statute amending the charter of said city, to which reference is made above, this provision of the zoning ordinance of the city does not per se deprive the plaintiff of her property without due process of law.

This brings us to determine whether, under the amendment to the constitution of this State and the statute enabling the city to pass a zoning and planning ordinance, the above provision of the zoning ordinance passed by the city is void because it is arbitrary and unreasonable when applied to the property of the plaintiff under the facts of this case. The charter of the city does not undertake to fix the provisions of the zoning ordinance which it authorizes the mayor and council of the city to pass. The ordinance in this case is based upon a general power granted by the charter of the city. A municipal ordinance based on a general power in a charter of a city must be reasonable. *Mayor &c. of Savannah* v. *Cooper*, 131 *Ga.* 670 (63 S. E. 138). Municipal ordinances must be reasonable. The limitations of the power of the city council in this regard are not to be measured by the more extensive powers of the State legislature. *Atlantic Postal Tel. &c. Co.* v. *Savannah*, 133 *Ga.* 66 (65 S. E. 184). An ordinance may be unreasonable or arbitrary, and if it is unreasonable or arbitrary it will be declared void and unenforceable. *Western &c. R. Co.* v. *Young*, 81 *Ga.* 397 (7 S. E. 912, 12 Am. St. R. 320); *Loeb* v. *Jennings*, 133 *Ga.* 796. The reasonableness or unreasonableness of a city zoning and planning ordinance is a question of law for the court to decide, unless it depends on the existence of particular facts which are disputed,

when it may become in part a question for a jury. *Metropolitan St. R. Co.* v. *Johnson,* 90 *Ga.* 500 (16 S. E. 49). This brings us to decide whether this provision of the zoning ordinance is unreasonable or arbitrary as applied to the property of the plaintiff under the facts disclosed by the record. When the plaintiff purchased her property in 1910, it was situated in a section which was largely, if not entirely, residential. It is still located in a zone which is very largely residential, and which has not been invaded by business and business structures. Trade's unfeeling hand has not touched the district zoned. When the plaintiff purchased her property she enlarged the improvements thereon for residential purposes. This purpose has not been interfered with in any manner by the creation of this zoning district. The property of the plaintiff is still available under the zoning ordinance for all residential purposes, apartments, churches, hospitals, hotels and schools. The west side of the residence of the plaintiff fronts on Forsyth Park Extension, Drayton Street alone intervening between the lot of plaintiff and the Park Extension. The west side of a filling-station erected on the property of the plaintiff would likewise front on the Park Extension. Forsyth Park and Extension furnish a playground for children and a place of recreation for grown people. Playgrounds and places of recreation are essential to the welfare and health of a community. The erection of business structures around this park and extension would impair their usefulness as playgrounds and pleasure resorts. The erection of filling-stations brings new perils to person and property. They endanger, to some extent, limb and life. Business structures on the streets which form the boundaries of this lovely park would tend to destroy its loveliness and beauty; and do not the beauty of parks conduce to the general welfare of the city? Telfair Hospital, although not within this zoned district, is situated on the southwest corner of Park Avenue and Drayton Street, diagonally across from and within 80 feet of the property of the plaintiff. The noises incident to the operation of a filling-station might disturb the patients at this hospital. It is a matter of common knowledge that it often becomes necessary to rope off the streets adjacent to hospitals, in order to protect patients therein from the noises produced by vehicular and other traffic on and over such streets. In the circumstances, we can not say that the zoning of the property abut-

ting upon the streets which bound Forsyth Park and Extension, and which fronts upon this park as extended, is so arbitrary and unreasonable as to render the zoning ordinance invalid.

■ Does this provision of the zoning ordinance violate the due-process clause of the 14th amendment to the constitution of the United States? The Supreme Court of the United States has made a number of decisions which hold to the contrary of the proposition that zoning ordinances in general are unconstitutional and void because they deny due process to the owners of land. That court has laid down a number of propositions which are pertinent to the decision of the question in this case. If the validity of the legislative classification be fairly debatable, the legislative judgment must be allowed to control. The police power generally supports an ordinance forbidding the erection in designated residential districts of business houses, retail stores, shops, and other like establishments; and such ordinances, apart from special applications, can not be declared arbitrary and unreasonable, and without substantial relation to the public health, safety, morals, or general welfare. Village of Euclid v. Ambler Realty Co., 272 U. S. 365 (47 Sup. Ct. 114, 54 A. L. R. 1016). Again, the Supreme Court of the United States has laid down these propositions: A zoning ordinance dividing the City of Los Angeles into five building districts, and prescribing the lines of buildings that may be erected in each district, was held constitutional in its general scope, and not violative of the due-process or equal protection clauses as applied in the case under consideration. In that case the plaintiff's lot was in a zone limited by the ordinance to buildings for residences, churches, private clubs, educational purposes, etc., which ordinance excluded buildings for private business purposes other than physicians' offices. The value of the lot of the plaintiff in that case would have been much enhanced if it could be used for business purposes, for which it was favorably situated. Other property in the zone was largely restricted by covenant to residential uses. The entire neighborhood at the time of the ordinance was largely unimproved, but in course of rapid development. The conclusion of the city council, on these and other facts, that the public welfare would be promoted by establishing the zone could not be adjudged clearly arbitrary or unreasonable, and the court would not in such circumstances substitute its judgment

for theirs. Zahn *v*. Board of Public Works, 274 U. S. 325 (47 Sup. Ct. 594). The case at bar, under its facts, is a much stronger case for upholding the validity of the city ordinance than the case which we have just cited. The lots abutting on Forsyth Park and its extension are very largely occupied by residences, and are largely free from structures devoted to trade. On this property, it is true, there are a school building, a Sunday-school building, and several apartment buildings; but otherwise it is a residential section.

The case at bar is different from Nectow *v*. Cambridge, 277 U. S. 183 (48 Sup. Ct. 447). In that case the master to whom the controversy was referred found that no practical use could be made of the land in question for residential purposes; and that embracing the plaintiff's land in the residential district would not promote the health, safety, convenience, and general welfare of the inhabitants of that part of the city. In the case at bar it can not be held that this zoning ordinance clearly bears no relation to the public health, safety, convenience, and general welfare. In determining whether this zoning ordinance offends the due-process clause of the 14th amendment to the Federal constitution, we are governed by the decisions of the Supreme Court of the United States on this question. That court is the final arbiter of such question.

So we reach the conclusion that the trial judge reached the proper conclusion in denying a mandamus absolute requiring the grant of a permit to the plaintiff to build a filling-station upon her property.

*Judgment affirmed. All the Justices concur, except*

GILBERT, J., dissenting. I concur in the rulings in headnote 1 and the corresponding division of the opinion, on the incidental or preliminary questions. I also concur in substantially all of the general principles stated in the majority opinion, but dissent from some of the inferences drawn therefrom, and also from the result reached. It might be useful to state at the outset a number of general principles which are deemed not fairly open to debate, and which do not require citation of authority.

1. Courts are not concerned with the wisdom and advisability of legislation. Courts will not declare a statute or an ordinance invalid because of constitutional conflict, unless such conflict is clear

and manifest. Where such conflict is fairly debatable, the doubt will be resolved in favor of the validity of the legislation.

2. The sovereign State possesses inherently, and without constitutional or statutory provision, the right of self-preservation, which is called "police power," and this power may be delegated to municipalities by appropriate legislation.

3. The definition or the extent of police power has never been adjudicated. All efforts to do so have been held to be incomplete and limited by the facts of each particular case.

4. Under police power, property may be taken or damaged without payment of compensation, but such power is not unlimited.

5. The exercise of such power must bear a substantial relation to the public health, safety, morals, and general welfare of the public. It must be reasonable and not arbitrary. What is reasonable is for the court to decide.

6. "Due process of law in each particular case means, such an exertion of the powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs." Cooley's Con. Lim. (8th ed.) 741; 12 C. J. 1188, § 956 and cit.

7. When the constitution of the State or of the United States is duly amended, such amendment takes its appropriate place among the other provisions therein contained, the whole to constitute the fundamental charter. All of the different provisions must be harmonized, if practicable.

8. If an amendment duly adopted necessarily conflicts with some previous provision, the amendment, being the last expression of the sovereign will of the people, will prevail as an implied modification pro tanto of the former provision. The constitution of Georgia was duly amended in the year 1927. That amendment provided that the City of Savannah and other named cities in Georgia should have "authority to pass zoning planning laws whereby such cities may be zoned or districted for various uses and other or different uses provided therein, and regulating the use for which said zones or districts may be set apart, and regulating the plans for development and improvement of real estate therein. The General Assembly is given general authority to authorize said municipalities to pass zoning and planning laws." Ga. Laws

1927, p. 127. Prior to that amendment this court held in a number of cases that nuisances per se, or the doing of anything injurious to the public health, safety, morals, etc., of the public could constitutionally be prohibited, notwithstanding such prohibition might entail upon the owner or person affected loss and inconvenience, and even if the effect was burdensome; this because the right of every person to hold property is coupled with the inherent duty not to injure his neighbors. We have also frequently held that a filling-station is not a nuisance per se, but may be operated so as to become such. It is conceded that there is nothing in this evidence to indicate that the filling-station sought to be constructed will be so operated as to become a nuisance. It goes without saying that the amendment could not in any way affect provisions of the Federal constitution. The plaintiff insists that her property is being taken and damaged without due process of law, and without just compensation first being paid, as guaranteed by the State and Federal constitutions. It is universally conceded by the courts that the first ten amendments to the Federal constitution restrict the Federal Government only, and have no restraint on the States. The question now to be determined is whether the court erred in the application of the principles above stated. At the threshold of this discussion it is necessary to decide whether or not there is a conflict between the constitutional amendment ratified in 1927 and other portions of the constitution of Georgia, the protection of which is invoked. I see no difficulty in harmonizing the amendment with other portions of the State constitution. All may be considered together and due weight given to each. The new amendment constitutes an authoritative declaration on the part of the people of the public policy which has been made a part of the organic law. That policy is that, when duly authorized by law, property may be divided into zones and the improvements made shall be in accordance with restrictions laid thereon by proper authorities, when such restrictions are reasonable and not arbitrary. The property owner, whenever his property rights are interfered with, is guaranteed due process of law.

While constituted authorities have the right to restrict property rights, it must be done in accordance with the "law of the land." The owner must receive notice and be given an opportunity to be heard. The exercise of the power must bear a reasonable relation

to the public health, safety, morals, and general welfare. If the restrictive legislation meets these requirements, then under the police power the restriction is valid and constitutional, and the property owner must submit. Whether the action falls within the constitutional sphere of the State or municipality is a question to be decided under the facts of each particular case. Such was the ruling in Village of Euclid v. Ambler Realty Co., 272 U. S. 365 (supra). In that case the court expressly left other cases to be dealt with under their own peculiar facts as they might arise in the future, saying: "What would be the effect of a restraint imposed by one or more of the innumerable provisions of the ordinance, considered apart, upon the value or marketability of the lands is neither disclosed by the bill nor by the evidence, and we are afforded no basis, apart from mere speculation, upon which to rest a conclusion that it or they would have any appreciable effect upon those matters. Under these circumstances, therefore, it is enough for us to determine, as we do, that the ordinance in its general scope and dominant features, so far as its provisions are here involved, is a valid exercise of authority, leaving other provisions to be dealt with as cases arise directly involving them." Such was the writer's opinion of the ruling of this court in Smith v. Atlanta, 161 Ga. 769 (supra), and so expressed in a specially concurring opinion submitted when that case arose for a second time in this court. City of Atlanta v. Smith, 165 Ga. at p. 149 (supra). "The purpose of the guaranty [due process of law] is to prevent governmental encroachment against the life, liberty, and property of individuals, to secure the individual from the arbitrary exercise of the powers of government unrestrained by the established principles of private rights and distributive justice, and to protect property from confiscation by legislative enactment." 12 C. J. 1195, § 961. The term "property," as used in the constitutional guaranty against taking property without due process, includes not only title and possession, but also the right of control, and the right to make any legal use of the thing owned. 12 C. J. 1212, § 988 et seq.

When the government, State or municipal, takes away from the property owner the right to so improve his property in his own way, his property has been to a degree taken or damaged. Courts and text-writers have, without exception so far as I am aware, agreed that the right to use and develop one's property as the owner may

desire, provided the use is lawful and not unduly injurious to his neighbor is a valuable property right. In this case the evidence, because it is without conflict, demands a finding that the property of Mrs. Howden without restriction is worth double what it is with the restrictions imposed; therefore it is assumed that no one will deny that under the restrictive legislation she has been denied a right in her property of relatively great value. "A denial of due process of law results from any statute, whether State or Federal, which takes away any of the essential attributes of private property, or imposes unreasonable restrictions on its use." 12 C. J. 1215, § 991, and cit. The issues and the material portions of the evidence involved have been fairly stated by Mr. Justice Hines, and it is unnecessary to repeat them here. All of the evidence introduced by Mrs. Howden tends to show that the property is no longer suited to residential purposes; that she has been unable to sell the same if the restrictions can be constitutionally enforced. Attention is directed especially to the evidence introduced by the city, which does not differ materially from that offered by Mrs. Howden. It is all in accord with the appraisal of the Real Estate Board. One witness does testify that the property could be utilized for an apartment-house, but other evidence introduced by the city shows that it would be suitable and "could be used only for cheap apartments." The witnesses for the city testified that the property without restrictions would be worth $12,000, and that with restrictions it would be worth probably half; and furthermore, one of the witnesses, engaged in the real estate business for twenty-five years, testified that he knew the property, and that "it would not be desirable as an apartment-house on account of the hospital being across the way." So that under the evidence it is my opinion that a finding was demanded that the use sought to be made of the lot was lawful; that it was not a nuisance; that nothing indicated that it would be so operated as to become a nuisance; that the lessening of the value amounted to fifty per cent., and even then with no probability that the owner could find any purchaser with the restrictions enforced; and that the net result of the enforcement of the restrictions would be that the only use available would be for the owner to continue to occupy it as a residence, although it had ceased to be desirable for residence purposes.

Applying the principles above stated, the exercise of the power

of restriction in this case bears no substantial relation to the public health, morals, and safety of the public; is unreasonable and arbitrary, and therefore does not fall within the police power as delegated to the municipality; and denies to petitioner due process of law, and is a taking of her property without just compensation. If I am wrong as to a conflict with our State constitution, I am confident that the ordinance, as applied in this case, deprives the owner of due process guaranteed by the Federal constitution. For these reasons it was error to deny mandamus absolute requiring the grant of a permit to the plaintiff according to her prayer. Where, under the facts, such restrictive legislation does not legitimately fall within what is known as the police power of the State, the only other way private property may be taken for public purposes, as sought to be done in this case, is by the exercise of the right of eminent domain, in which case the property owner must be paid just compensation. It has been held by the Supreme Court of the United States, with reference to the fifth amendment to the Federal constitution with regard to the taking of property without just compensation, that the limitation in such fifth amendment "is merely a limitation upon the use of the power. It is no part of the power itself, but the condition upon which the power may be exercised." U. S. v. Jones, 109 U. S. 513 (3 Sup. Ct. 346, 27 L. ed. 1015).

It may not be out of place to make some reference to the arguments used in the majority opinion. In the opinion written by Mr. Justice Hines he states: "The courts have, however, for some time been taking more and more liberal views of the zoning power; and . . a new principle seems to have been introduced, the California court holding that 'the establishment of strictly residential districts by zoning ordinances may be justified because it is for the protection of the civic and social values of the American home.'" I must confess that I am stumped by the expression that such "ordinances may be justified because it is for the protection of the *civic and social* values of the American home." Whatever that may mean, it would seem to be sufficiently elastic to permit to be done whatever the court may by "construction" so decree. Verily, property rights, under that rule, rest upon frail support. No one in this day contends that the right of private ownership of property is absolute. If held, it must be so used as not to injure un-

reasonably the rights of others. It is also said in the majority opinion that "the majority of recent cases upon this subject uphold the constitutionality of zoning statutes and ordinances." I concede the correctness of the last statement of my learned brother, for whose opinions I entertain the greatest respect. The American courts have very generally approved the constitutionality of governmental destruction of property rights, rights which have, from the beginning of struggling America, been a constant incentive and inspiration to the industrious and frugal to build for the future. Is the breaking down and destruction of that incentive a worthy achievement of the courts of America? Only time will demonstrate. I am not blind to the apparently overwhelming tendency to weaken and destroy individual enterprise and self-reliance, and to more and more magnify the powers of government, and to encourage more and more the citizen to seek whatever he wants from a munificent, generous, and all-powerful government. The history of this and other modern developments of urban life discloses a consistent policy of selecting leading and trustworthy citizens to inaugurate the work of such boards and commissions. This is intended to, and does, inspire public confidence and approval. Such selections may for awhile be limited to trustworthy citizens. While this continues, widespread popularity is gained for the practice. But as to future boards created by municipal governments, what may we expect, in the light of recent history? Such popularity is partly based also upon the fact that the contest is ever between the many in favor of restriction against one or a few. It is only human nature for one to believe sincerely in the justness of that which redounds to his own interests or appeals to his desires. For these reasons, it is the duty of the courts, the last palladium of the weak against the strong, the few against the many, to construe strictly these limitations upon individual property rights, and to administer justice under the law and the evidence. Truth is the object of every legal investigation.