SCHOFIELD v. BISHOP.

No. 13826. SEPTEMBER 10, 1941.

*Martin, Martin & Snow,* for plaintiff.

*E. W. Maynard, Ellsworth Hall Jr., Hall & Bloch,* and *Turpin & Lane,* for defendant.

REID, Chief Justice. This case turns on the determination of the validity of a zoning ordinance of the City of Macon. In September, 1940, Mrs. Scofield, who owned property on Vineville Avenue in the City of Macon in an area described in the record as being near the confluence of Hardeman Avenue and Forsyth Street, sought from Bishop, the building inspector of the city, a building permit for the erection of three business houses, a theater building,

a grocery-store and a drug-store. This permit was refused, because to grant it would have been to permit violation of a zoning ordinance which had been enacted by the mayor and council on May 14, 1940. Under the terms of this zoning ordinance a small area embracing what was called the one hundred block of Vineville Avenue and a limited portion of Hardeman Avenue and Forsyth Street had been restricted by provisions which would make it unlawful "for any person, firm, or corporation to build or construct any building within four hundred feet of either side of the portions of Vineville Avenue, Hardeman Avenue, and Forsyth Street [described as the area above mentioned, which would include plaintiff's property] for any purpose or use other than homes, apartment-houses, or churches." This ordinance was passed under the authority of an amendment to the charter of the City of Macon, enacted by the legislature in 1939 (Ga. L. 1939, p. 1140), a part of section 1 of which is as follows: "'Without limiting the generality of the foregoing, the Mayor and Council of the City of Macon shall have authority to enact zoning and planning laws, whereby such city may be zoned or districted for various uses and other or different uses prohibited therein, and regulating the uses for which said zones or districts may be set apart, and regulating the plans for the development and improvement of real estate therein.'"

Before 1928 the courts had held that municipalities were without power to enact such zoning laws and regulations. *Smith* v. *Atlanta,* 161 *Ga.* 769 (132 S. E. 66); *Morrow* v. *Atlanta,* 162 *Ga.* 228 (133 S. E. 345); *City of Atlanta* v. *Smith,* 165 *Ga.* 146 (140 S. E. 369). At the general election in November, 1928, a constitutional amendment was ratified (Code, § 2-1825), which provided that the General Assembly should have authority to grant to named municipalities, including the City of Macon, "authority to pass zoning and planning laws whereby such cities may be zoned or districted for various uses and other or different uses prohibited therein, and regulating the use for which said zone or districts may be set apart, and regulating the plans for development and improvement of real estate therein." The amendment contained the additional provision that the "General Assembly is given general authority to authorize" certain cities including Macon "to pass zoning and planning laws."

Upon being denied the building permit by Bishop, the building

inspector, Mrs. Schofield, on September 18, 1940, filed her petition seeking mandamus to require its issuance. In the petition she attacks the validity of the ordinance on the grounds (1) that it was arbitrary, unreasonable and capricious, in that it destroyed her property without benefiting the public safety, health, morals or general welfare; (2) because it was discriminatory in that it prevented her from using her property for business purposes although the use of other property similarly situated was not so restricted; (3) because it attempted to create a monopoly in behalf of the owners of unrestricted property in the City of Macon; (4) because it violated that provision of the Constitution referred to above as having been ratified in 1928 and now contained in the Code, § 2-1825, in that the ordinance "* * * is merely an isolated, haphazard zoning law restricting the use of a part of three streets and is not a part of a comprehensive plan of zoning or districting the entire municipality or a substantial part thereof." (5) (6) Because it violated the due process clauses of the Federal and State Constitutions.

Bishop, the building inspector, filed a plea setting up the ordinance brought under attack in the petition and justifying it as against the attacks made upon it. Before the case came to trial and in January, 1941, the mayor and council enacted a further ordinance which by way of preamble declared it to be the policy of the City of Macon to take full advantage of the power given in its charter amendment and that the mayor and council contemplated the orderly, gradual zoning of the entire city with a plan looking to that end. But the terms of the ordinance itself merely readopted the one attacked by the plaintiff along with thirteen others of similar import which had at various times, after the charter amendment, been enacted by the city respecting different separate areas usually disconnected from each other. The case was submitted to Judge Edwards, presiding in lieu of Judge Jones, disqualified, upon all the issues without the intervention of a jury. He rendered the judgment refusing the writ of mandamus, holding, in an opinion which appears in the record as a part of the judgment, that the original ordinance of May, 1940, was valid as against all attacks made upon it, and holding as valid also, for the purpose of considering it in evidence, the subsequent ordinance of January, 1941, which re-enacted all the previous ones.

The attacks on the ordinance under consideration, that it is arbitrary, unreasonable, discriminatory, etc., and that it deprives the affected persons of their property without due process of law, are so closely related to and comprehended in the main question as to the charter power for its enactment, the whole matter will be discussed somewhat together, with separate rulings stated in the headnotes.

The chief argument for plaintiff is planted upon the proposition that the ordinance upon which the building inspector acted in refusing to grant building permit sought by the plaintiff went beyond the charter power of the city which corresponded in terms with the power which the constitution provides may be granted to municipalities. The contention is that by use of the language "zoning and planning laws," the constitution means—and accordingly the grant of the charter power, that anything short of a complete and comprehensive scheme of planning *and* zoning for the entire city would not be authorized. In other words, according to the contention made, a municipality might not enact a zoning ordinance without also enacting a planning ordinance. This view has been presented very earnestly, and we have carefully examined the question; but we reach the conclusion that this language means a general grant of such power which would not be so limited. There would seem to be no reason why it would be expected that a municipality should exhaust all the power granted in a general plan or ordinance. It is true, as pointed out, that many municipalities, particularly the most populous ones, devote elaborate efforts along this line. Some establish planning commissions for more or less continuous service in order to anticipate the growth of the city and provide for its expanding needs and its shifting population centers. In the case of a charter amendment granted to the City of Atlanta (Ga. L. 1927, p. 786), provision was made for the city to enact a "comprehensive scheme of planning and zoning," but many other charter amendments granted since 1928 followed the language of the constitutional provision as does the one in the present case. When the case is examined there seems to be in the nature of things a plan behind every zoning ordinance; they are more or less related and governed by similar considerations. Any scheme of regulation or restriction follows some kind of plan. It really, therefore, is a matter of the extent and comprehensiveness of the plan. It appears in the present case, as already pointed out, that in the

City of Macon the councilmanic body and the mayor had gone at the problem somewhat gradually, zoning a limited section at one time, and, perhaps in response to demands of some other section of the community, dealing with restrictions there at a later time. The more reasonable view would seem to be that in framing and passing upon the constitutional amendment and in passing legislation in conformity to it, the people and the members of the General Assembly would expect this power to be exercised as suited to the needs of the city, and ordinarily that question would be determined by those who rule the affairs of the city, so long, of course, as they did not go beyond their charter authority or transgress the general law. It would seem to be a most strained construction to say that under this grant of power a municipality, in order to get the benefit of it, would be compelled to zone and plan all at the same time and for the entire city. It might very well be that in the judgment of those in authority the greater portion of the city, or a substantial part of it, should not be restricted, and the very fact that it has not been so restricted is a clear indication that in the judgment of the governing body it should be left free. In this phase of the case it really becomes a question whether the power exists and not how or when it should be exercised. We find nothing in the authorities cited for the plaintiff on this question as to "zoning and planning" that seems to relate to the *power* of a governing body, whether under the police power, as is permitted in some States or under a specific constitutional provision as in this State, to enact such regulations or ordinances under the one name or the other. But in any event, since in the present instance we are dealing with a specific grant of power under a special constitutional provision, we must look to those terms to find the boundary where it is delimited. It seems clear that the power to pass "zoning and planning laws" means the power to pass both or either. And as to whether it must be done in one sweeping exhaustive ordinance by the municipality, this really involves an inquiry as to whether a particular ordinance is discriminatory rather than whether the power is existent.

The complaint that the ordinance in question is arbitrary, unreasonable and capriciously enacted because of the imposition it works on the plaintiff in reference to her property does not find support in the record. There is ample evidence to support the

finding which seems to have been made by the municipality and by the judge, that the area restricted was already predominantly residential. It is true there were in the general neighborhood some business places, filling-stations, grocery stores, drug-stores, etc., apparently grown up in response to the needs of the community. These by the ordinance were allowed to remain, but the verified maps in the record as well as the testimony fully support the judgment that the community in general was largely residential. The law throws many protections around the ownership of property. This protection is written into the fundamental law both State and Federal; but when it comes to the growing needs, particularly in populous areas, for public regulation and restriction, we find we do not own our property as absolutely as is sometimes thought. There are many times misfortunes attached to the ownership of it. It declines in value because of shifting centers of business or of residents, or increases sometimes due to important developments. These are matters that can not always be controlled; and when a public body is granted or enjoys the power for the public benefit to put restraint on the use of the property in populous areas, the inquiry then is merely a matter of whether they had sufficient cause for the public good to make such restrictions. We know that ordinarily they should be in a better position to understand the needs of their own communities; and where once they are given the power, courts will not interfere with the exercise of it unless it appears that the rights of a citizen have been violated. It is not the business of the courts to regulate these governing bodies as to matters within their discretion. In *Howden* v. *Savannah,* 172 *Ga.* 833 (159 S. E. 401), this court dealt with certain attacks made upon an ordinance of the City of Savannah enacted under authority granted by an amendment to that city's charter (Ga. Laws 1929, p. 1281), where, as in the present instance, the terms defining the power followed the language of the constitutional amendment as to "zoning and planning laws." It was there held: "Under the above amendment to the constitution of this State and the statute amending the charter of the City of Savannah, the provision of the zoning ordinance of that city, under which the lot of the plaintiff is embraced in a zoning district, does not deprive her of her property without due process of law." And in reference to the denial of a building permit to erect a gasoline filling-station in an area

restricted under the ordinance it was said: "The precise question for adjudication is this: Is the denial to the owner of a residence lot located in a district zoned, by a city ordinance passed in pursuance of legislative and constitutional authority, exclusively for residences, apartments, churches, hospitals, schools, and hotels, of a permit to erect on such lot a gasoline filling-station a deprivation of her property within the meaning of the due-process clauses of the constitution of this State and of the 14th amendment to the constitution of the United States? In other words, can an owner of land be constitutionally denied the right to erect thereon a building for the conduct of a business therein, if neither the business nor the manner of its operation constitutes a nuisance?" After going into the history of the question generally, and pointing to the constitutional·amendment now being dealt with, the court stated further: "So we have in the constitution as now amended both the due-process clause and this zoning provision. They must be construed together. In view of this amendment it can not longer be held that a zoning statute, which authorizes a city embraced within it, to pass a zoning and planning ordinance, is per se unconstitutional and void because it deprives the owner of real estate of his property without due process of law. This constitutional provision supersedes the decisions of this court which declared zoning statutes unconstitutional and void because they denied due process of law to the owners of real estate embraced in zoning districts. By the act of August 26, 1929, amending the charter of the City of Savannah, it is provided 'that the Mayor and Aldermen of the City of Savannah shall have authority to enact zoning and planning laws whereby such city, and also its environs within the limits of Chatham County, may be zoned or districted for various uses and other or different uses prohibited therein, and regulating the uses for which said zones or districts may be set apart, and regulating the plans for development and improvement of real estate therein.' Acts 1929, pp. 1281, 1286. In view of the amendment to the constitution, the statute which authorized the City of Savannah to pass a zoning and planning ordinance is not unconstitutional and void. In pursuance of this statute the Mayor and Council of the City of Savannah passed a zoning ordinance which embraces the provision set out and dealt with in the first division of this opinion. . . This brings us to determine whether, under

the amendment to the constitution of this State and the statute enabling the city to pass a zoning and planning ordinance, the above provision of the zoning ordinance passed by the city is void because it is arbitrary and unreasonable when applied to the property of the plaintiff under the facts of this case. The charter of the city does not undertake to fix the provisions of the zoning ordinance which it authorizes the mayor and council of the city to pass. The ordinance in this case is based upon a general power granted by the charter of the city. A municipal ordinance based on a general power in a charter of a city must be reasonable. *Mayor &c. of Savannah* v. *Cooper,* 131 *Ga.* 670 (63 S. E. 138). Municipal ordinances must be reasonable. The limitations of the power of the city council in this regard are not to be measured by the more extensive powers of the State legislature. *Atlantic Postal Telegraph &c. Co.* v. *Savannah,* 133 *Ga.* 66 (65 S. E. 184). An ordinance may be unreasonable or arbitrary, and if it is unreasonable or arbitrary it will be declared void and unenforceable. *Western &c. R. Co.* v. *Young,* 81 *Ga.* 397 (7 S. E. 912, 12 Am. St. R. 320) ; *Loeb* v. *Jennings,* 133 *Ga.* 796 (67 S. E. 101, 18 Ann. Cas. 376). The reasonableness or unreasonableness of a city zoning and planning ordinance is a question of law for the court to decide, unless it depends on the existence of particular facts which are disputed, when it may become in part a question for a jury. *Metropolitan Street R. Co.* v. *Johnson,* 90 *Ga.* 500 (16 S. E. 49)."

Once the decision is made that the governing body possesses the power to zone and restrict the use of property—and in this State the General Assembly with the ratification of the people has so decided—then the acts of such body in the exercise of such power will not be disturbed by the courts unless they are clearly arbitrary and unreasonable. Gorieb *v.* Fox, 274 U. S. 603 (47 Sup. Ct. 675) ; Euclid *v.* Ambler Realty Co., 272 U. S. 365 (47 Sup. Ct. 114, 54 A. L. R. 1016) ; *Howden* v. *Savannah,* supra. In the Gorieb case, supra, dealing with an ordinance restricting the character and location of buildings on property and in speaking of zoning ordinances generally, Justice Sutherland stated: "State legislatures and city councils, who deal with the situation from a practical standpoint, are better qualified than the courts to determine the necessity, character and degree of regulation which these new and perplexing conditions require; and their conclusions should

not be disturbed by the courts unless clearly arbitrary and unreasonable. Zahn *v.* Board of Public Works, [274 U. S. 325, 47 Sup. Ct. 594], and authorities cited." In the present instance it appears that, before the passage of the ordinance involved, hearings were had, people in the affected area were heard, both those advocating the ordinance and those opposing it; and the governing body, the appropriate one, made the decision. We can not interfere under the showing made in the record before us. This disposes of the various attacks made on the original ordinance of May 1940, under which the building inspector acted in refusing the plaintiff her permit. Having held this ordinance valid it is unnecessary to pass upon the validity of the subsequent ordinance which purported to re-enact all the zoning ordinances previously passed, except to consider whether the judge erred in admitting it in evidence. We think in doing so he committed no error. The use of the property of plaintiff was lawfully restricted without regard to this ordinance. It at least served the purpose of disclosing in accordance with its recitals the policy of those governing the municipality in the exercise of the power granted by the charter, and might well have been considered by the judge for this purpose.

*Judgment affirmed. All the Justices concur.*