33005. CITY OF SMYRNA et al. v. PARKS.

MARSHALL, Justice.

The appellee, Parks, was cited by the appellant city for violation of Section 501.10 of the city's zoning ordinances, which provides as follows: "Within any front yard in a [sic] R-15, R-20 or R-30 zoning district, no chain

link or similar woven wire fence shall be permitted. However, within a front yard in the aforementioned districts, a decorative or ornamental rail, split rail, picket, stockade, basketweave or similar fence constructed of wooden materials may be permitted provided that said fence does not exceed four (4) feet in height."

In the recorder's court, in which the appellee was cited to appear, the appellee filed a demurrer to the citation, which attacked the ordinance as unconstitutional and void, because it allegedly violates the due process and equal protection clauses of the State and Federal Constitutions, and further that (1) it deprives the appellee of the reasonable use of his real estate without just compensation; (2) it denies the appellee the right to protect the lives of his family and property; and (3) said ordinance is enforced in an unreasonable, unequal and arbitrary manner. He contended further in his demurrer that the ordinance is "unreasonable and oppressive in that it bears no reasonable relationship to the health, safety, welfare or morals of the people of the City . . ., and is an arbitrary abuse of the police powers granted to the City . . . through the State Legislature."

The recorder's court, ruling that it did not have the authority to declare the ordinance unconstitutional, overruled the appellee's demurrer. The appellee entered a plea of not guilty, then produced seven witnesses to testify on his behalf. Of four persons testifying who had been in office at the time of the enactment of the ordinance in question, two of them (one a councilman, the other the mayor) stated that the reasons for its enactment were the safety of the citizens (i.e., that metal, chain-link fences were more difficult for firemen to go through to gain access for firefighting purposes, and had sharp wires on top which might, and in some instances did, injure citizens) and aesthetics. Of the other two, who were councilmen, one stated that the basis was safety alone (saying that it would injure persons more to run into chain-link fences, which he guessed were made of wire, than into wooden fences) and the other that it was aesthetics alone. Another witness, who had been a councilman, but not at the time of the enactment of the

ordinance, speculated that the reason was safety.

Leon Hood, called by the appellee as a witness, had been a City of Smyrna building inspector for almost two years since the March, 1974, effective date of the ordinance. He testified that, during this time, he had not observed any violations, made any cases, or taken out any warrants for violations of the ordinance, although there were fences which had been erected prior to the enactment of the ordinance. He further testified that permits have been required for the erection of fences subsequent to the effective date of the ordinance. Appellee's witness Lee, owner of a fence company, testified that he had erected "three or four" chain-link fences in the city since the effective date of the fence ordinance, some in side yards and some in front yards. He testified that, to his knowledge, none of those property owners had been cited by the city for violation of the fence ordinance.

At the conclusion of the hearing, the recorder's court found the appellee guilty as charged, and assessed a $100-per-day fine for every day beyond 30 days that the fence shall not have been removed.

Thereafter, an appeal was filed to the Mayor and Council of the City of Smyrna. At the appeal hearing, evidence and argument of appellee's counsel were heard. It appears from a copy of the minutes of this special called meeting that the appellee's counsel testified that one third of the fence already had been erected when the appellee bought the property, which fact had not been brought out in the recorder's court; and that a city employee, Anita Greathouse, testified that, prior to the installation of the remainder of the fence, the appellee came into her office and asked to see a copy of the fence ordinance, which he was shown, and was advised that he could not erect a chain-link fence across his front yard, but that no application for a permit was filled out. The Mayor and City Council of Smyrna affirmed the conviction by the recorder's court.

The appellee thereafter was granted certiorari by the Cobb Superior Court. The City of Smyrna alleges in its brief that it timely moved to dismiss the petition for certiorari on five grounds; however, no such motion appears in the record before this court on appeal, and the

appellee does not stipulate this motion. The superior court reviewed the case based upon the evidence adduced in the lower tribunals, and reversed the conviction, holding that the ordinance was an unreasonable exercise of police power, because it made a distinction between wooden fences, which are permissible, and wire fences, which are impermissible, under the guise of public safety; that the testimony failed to establish any rational basis as to why a wire fence is a greater hazard to the public's safety than a wooden one; and that the ordinance is arbitrary and unreasonable, hence unconstitutional, null and void.

The city appeals from the judgment of the superior court. We reverse. *Held:*

The unrefuted evidence in this case is that the appellee specifically knew that the ordinance forbade chain-link fences in front yards in his zoned district, yet completed the erection of the fence in disregard of the ordinance. Thus, he is bound by the ordinance if it is valid.

Since the enactment of Ga. L. 1935, p. 112, which amended Code § 29-301 so as to provide that restrictive covenants are void after the passage of 20 years in municipalities where zoning ordinances are in effect, municipalities have had a duty and obligation, imposed by legislative and judicial mandates, to provide a reasonable and adequate substitute for covenants, to protect the property interests of residents.

"The acts of the governing body of a county [or municipality] exercising zoning power will not be disturbed by the courts unless they are clearly arbitrary and unreasonable. Gorieb v. Fox, 274 U. S. 603 (47 SC 675, 71 LE 1228, 53 ALR 1210) (1927); *Pruitt v. Meeks,* 226 Ga. 661 (177 SE2d 41) (1970); *Morgan v. Cherokee Hills &c. Co.,* 226 Ga. 60 (172 SE2d 669) (1970);*Humthlett v. Reeves,* 212 Ga. 8 (90 SE2d 14) (1955); *Schofield v. Bishop,* [192 Ga. 732 (16 SE2d 714) (1941)]; *Howden v. City of Savannah,* [172 Ga. 833 (159 SE 401) (1931)]. In Gorieb v. Fox, supra, p. 608, Justice Sutherland, referring to zoning ordinances, stated, 'State legislatures and city councils, who deal with the situations from a practical standpoint, are better qualified than the courts to determine the necessity, character and degree of regulation which these new and perplexing conditions

require; and their conclusions should not be disturbed by the courts unless clearly arbitrary and unreasonable.'

"In *Humthlett v. Reeves,* supra, p. 15, this court described the burden which the property owner must meet in order to prevail: '[T]he burden is on the owner of such property to produce sufficient evidence from which the court can make findings of fact and law such as would justify a holding as a matter of law that the ordinance is arbitrary and unreasonable. It would not be sufficient to show that a more profitable use to the owner of the property could be made, or that such other use will not cause injury to the public, but there must be a showing of an abuse of discretion on the part of the zoning authority, and that there has been an unreasonable and unwarranted exercise of the police power.' " *Matthews v. Fayette County,* 233 Ga. 220, 225 (210 SE2d 758) (1974).

The appellee contends that the ordinance is unconstitutional because it deprives him of the reasonable use of his real estate without just compensation. "In *Howden v. City of Savannah,* 172 Ga. 833 (159 SE 401) (1931), . . . [t]his court held that because of the constitutional amendment investing the General Assembly with authority to empower cities to pass zoning laws, it can no longer be said that a zoning statute is per se unconstitutional and void because it deprives the owner of his property without due process of law. This position has been consistently followed by this court. E.g., see *Schofield v. Bishop,* 192 Ga. 732 (16 SE2d 714) (1941); *Palmer v. Tomlinson,* 217 Ga. 399 (122 SE2d 578) (1961)." *Matthews v. Fayette County,* 233 Ga. 220, supra, p. 224.

Nor does the ordinance deny the appellee the right to protect the lives of his family and property, as he contends. The ordinance does not exclude *all* fences from being erected in the front yard of the appellee's property, but specifically allows "ornamental rail, split rail, picket, stockade, basketweave or similar fence constructed of wooden materials." It was not shown that none of the types of allowed fencing was adequate for protection purposes.

The ordinance was not an unreasonable, unwarranted, or arbitrary exercise of the city's police power. Code Ann. § 69-1207 (Ga. L. 1957, pp. 420, 425;

1969, pp. 735, 736), the constitutionality of which has not been challenged, provides in part as follows: "For the purpose of promoting the health, *safety,* morals, *convenience, order,* prosperity, or *general welfare* of the municipality . . ., the governing authorities of the municipality . . . are hereby empowered . . . to regulate the location, height, *bulk,* number of stories and *size* of buildings *and other structures,* the percentage of lot which may be occupied, the sizes of yards, courts, and other open spaces, the density and distribution of populations, and the uses of buildings, *structures,* and land for trade, industry, *residence,* recreation, agriculture, forestry, conservation, water supply, sanitation, protection against floods, public activities, *and other purposes.* Such regulations shall be made in accordance with a comprehensive plan and shall be designed to lessen congestion in the streets; *to secure safety from fire,* panic, and other dangers; *to promote health and the general welfare;* to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks, *and other public requirements.* Such regulations shall be made with reasonable consideration, among other things, of the *character of the district* and *its peculiar suitability for particular uses,* and with a view to *promoting desirable living conditions* and the *sustained stability of neighborhoods, protecting property against blight and depreciation,* securing economy in governmental expenditures, *conserving the value of buildings* and *encouraging the most appropriate use of* land and other buildings and *structures* throughout such municipality. .." (Emphases supplied.)

The above statute is quoted in order to illustrate the broad scope of municipalities' powers of regulation of property within their boundaries. Certainly, "other structures" can reasonably be construed to include fences. Likewise, if the bulk and size of fences can be regulated, as well as the "uses of . . . structures [fences] . . . for . . . residence," it would seem to follow that the type of construction and constituent materials can be regulated within reason. The statute provides for specific purposes,

such as "to secure safety from fire." It also lists more general goals, such as "to promote health and the general welfare; to facilitate . . . other public requirements." That the municipalities were intended by the General Assembly to be empowered with the authority to protect the property interests of citizens in their residential neighborhoods is apparent from references to the "character of the district," "its particular uses," "promoting desirable living conditions," "sustained stability of neighborhoods," "protecting property against blight and depreciation," "conserving the value of buildings," and "encouraging the most appropriate use of land and other buildings *and structures.*"

It remains only to be determined whether the particular regulation in question fits the mold of the above guidelines. The evidence as to the intent of the councilmen who passed the ordinance, regardless of its relevancy or admissibility, points to a multiple purpose, i.e., safety and general welfare (or, specifically, protection of property values within residential districts). There was testimony that a number of persons had been injured on the sharp ends of chain-link fences within the city. There was also testimony that it was easier for fire-fighters to gain access to burning houses through wooden fences than through the more substantial metal or chain-link fences.

Even if the ground of safety is deemed a tenuous one, however, the ordinance would not be an unwarranted exercise of police power based on aesthetics alone, provided there is a reasonable relationship between the regulation and the legitimate purposes of regulations, as enunciated by the legislature. As was pointed out in Gorieb v. Fox, 274 U. S. 603, supra, the city council, which deals with situations from a practical standpoint, is better qualified than the courts to determine the necessity, character and degree of regulation required by the changing local conditions, hence their conclusions must be *clearly* arbitrary and unreasonable in order to be set aside on constitutional grounds. We cannot say that chain-link fences can have no deleterious effect whatsoever upon the character of a residential neighborhood. In the minds of many, such fences are

associated with commercial and even prison usages. If the council deems this to be the probable or possible effect of such fences, which it evidently did, then we are not in a position to reassess the local situation in that municipality.

In Commonwealth v. Alger, 7 Cush. 53, 84 (61 Mass., 1851), it was held, "Every holder of property, however absolute and unqualified may be his title, holds it under the implied liability that his use of it may be so regulated, that it shall not be injurious to the equal enjoyment of others having an equal right to the enjoyment of their property, nor injurious to the rights of the community." A parallel may be drawn in the arguments used in cases seeking to allow billboards and sign advertisements in districts wherein they are prohibited, upon the ground that the reasons for prohibiting such things are solely aesthetic. The United States Supreme Court has upheld the exclusion of billboards from residential zones. See Euclid v. Ambler Realty Co., 272 U. S. 365, 380 (47 SC 114, 71 LE 303) (1926); St. Louis Poster Advertising Co. v. St. Louis, 249 U. S. 269, 274 (39 SC 274, 63 LE 599) (1919); Thomas Cusack Co. v. Chicago, 242 U. S. 526, 530 (37 SC 190, 61 LE 472) (1917). In General Outdoor Advertising Co. v. Dept. of Public Works, 289 Mass. 149, 196 (193 NE 799) (1935), the court, upholding an ordinance excluding signboards from residential blocks, held to the effect that there can be no question that, if a regulation finds a reasonable justification in serving a generally recognized ground for the exercise of that power, the fact that aesthetic considerations play a part in its adoption does not affect its validity. In Berman v. Parker, 348 U. S. 26, 33 (75 SC 98, 99 LE 27) (1954), the U. S. Supreme Court held that "[t]he concept of the public welfare is broad and inclusive. . . The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well balanced as well as carefully patrolled." This legal precept has long been followed in other jurisdictions, as in State v. Wieland, 269 Wis. 262, 265 (69 NW2d 217, 219); cert. den., 350 U. S. 841 (76 SC 81, 100 LE 750) (1955)), where the following regulation was held to be

constitutional: "No building permit for any structure . . . shall be issued unless it has been found as a fact by the building board . . . that the exterior architectural appeal and functional plan . . . not be so at variance . . . of the structures already constructed . . . in the immediate neighborhood or the character of the applicable district . . . as to cause a substantial depreciation in the property values of said neighborhood. . ." Accordingly, we hold that the ordinance in question is not unconstitutional per se.

"[Z]oning ordinances must not only be non-discriminatory and reasonable but must also be applied in a non-discriminatory and reasonable manner in order to be enforceable. *Tuggle v. Manning,* 224 Ga. 29 (159 SE2d 703) (1968); *City of Rome v. Shadyside Memorial Gardens,* 93 Ga. App. 759 (92 SE2d 734) (1956). However, whether an ordinance is uniformly enforced by the authorities is a question of fact." *Matthews v. Fayette County,* 233 Ga. 220, supra, p. 226. In the case sub judice, the only evidence in the record on this issue is testimony in the recorder's court merely that "some" chain-link fences, in unspecified number and location, had been erected in a front yard or yards in the city subsequent to the effective date of the ordinance; that the city building inspector had not observed any violations, made any cases, or taken out any warrants for violations of the ordinance; and that the owner of the fence company which had erected such a fence or fences knew of no citations for violations of the ordinance. Although it is apparent from the record before us that, for various reasons, this issue was never ruled on in the recorder's, or police court, nor on the appeals to the mayor and city council and the superior court, the above evidence was insufficient as a matter of law to prove a denial of equal protection of the law. Cf., *Matthews v. Fayette County,* supra, p. 226.

Accordingly, the judgment of the superior court, ruling the ordinance to be unconstitutional, is reversed.

*Judgment reversed. All the Justices concur, except Jordan, J., who dissents.*

Submitted November 18, 1977 — Decided January 24, 1978 —
Rehearing denied February 8, 1978.

*Cochran, Camp & Snipes, Charles E. Camp,* for appellants.
*Charles E. Clark,* for appellee.