RAIMUNDA TORRES VDA. DE APONTE, Petitioner, *v.* PUERTO RICO PLANNING BOARD, ETC., Respondent.

No. 5. Argued March 4, 1953.—Decided May 18, 1953.

*Henry G. Molina* and *D. Curet Cuevas* for appellant. *Rafael R. Fuertes, A. Sandín del Manzano, José L. Purcell, J. Bonilla Díaz* and *José E. Nieves,* for respondent.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

On April 24, 1951, petitioner herein appealed to the Planning Board from a decision of the Permit Official denying a building permit for a two-story building for commercial and dwelling purposes at the corner of Loíza and Aponte Streets in Santurce.

On September 26 of that year, the Planning Board entered the following order affirming the decision of the Permit Official:

"Petitioner in the above entitled case requested permission from the Permit Official to erect a two-story commercial-residential building, of reinforced concrete, at the corner of Aponte and Loíza Streets in Santurce in a C-2 district.

"The Permit Official denied the petition on the ground that the project did not conform to the zoning regulations.

"This case must be considered as a special appeal. After due consideration, this Board makes the following findings of facts and conclusions of law:

"1. That the lot for the proposed construction is located in the same block and faces the same side of Aponte Street as lots comprised in the adjacent residential district, which is an R-4 district.

"2. That if the project under consideration is allowed, the building would lack the front yard required by Section 49, Par. 3 of the Zoning Regulation, which provides that lots in a C-2 district located in the same block and fronting on the same side of the street as lots comprised in an adjacent residential district, shall have a front yard with the same depth as that required in said adjacent residential district.

"3. That no special or extraordinary circumstances have been shown in this case to warrant an exception to the Zoning Regulation.

"For the aforesaid reasons, the decision of the Permit Official is hereby AFFIRMED."

Reconsideration of the above order was requested by petitioner and denied by the Board. Thereupon petitioner seasonably appealed to this Court pursuant to the provisions of § 26 of Act No. 213 of May 12, 1942 (Sess. Laws, p. 1106) as amended by Act No. 434 of May 14, 1951 (Sess. Laws, p. 1226), and alleges that the Board erred: (1) in deciding that Aponte Street is the front of petitioner's lot, and (2) in erroneously applying § 49, Par. 3 of the Zoning Regulation to the instant case, and, in addition (3) that the conclusions of law are not supported by the evidence.

On the other hand, the respondent Board duly raised in its brief the lack of jurisdiction of this Court to entertain the appeal, on the ground that the appeal from the decision of the Permit Official was not taken within the term of 15 days fixed by law.[1] However, this point was waived at the hearing by counsel for the Board, since petitioner offered documents which established that, while the notice of appeal had been originally filed *before the Permit Official* and not *before the Board*, it had been referred by said Official to the Board before the time for appeal had elapsed. The aforesaid documents justify the waiver of this point by counsel for the Board. Let us turn now to the matters raised by petitioner, which may be considered together.

 The record shows the following facts, which are not only admitted by petitioner, but also served in part as a basis for her permit application and, consequently, for this appeal: that she is the owner of a corner lot at Loíza and Aponte Streets in Santurce; that said lot is located on a C–2 district or zone, in the same block as other residential lots, and next to a residential district which fronts on Aponte Street.

Paragraph 8 (Sp. 47) of § 1 of Planning Regulation No. 4, enacted on May 22, 1946, as amended on January 4, 1950, defines a corner lot as follows:

"(8) Corner Lot, Sp. 47.—A lot fronting on the Junction or intersection of two streets."

And paragraph 3 of § 49, which petitioner claims that the Board erroneously applied, provides:

"Article 49.— (3) *Front yard.*—Front yards shall not be required *except on lots in a C–2 District, in the same block and fronting on the same side of a street as lots in an adjacent residential district.* Such a front yard shall have a depth equal to that required in the abutting residential district." (Italics ours.)

[1] The law in effect on April 24, 1951, when the appeal was taken from the decision of the Permits Official, was Act No. 429 of April 23, 1946 (Sess. Laws, p. 1218) which amended § 26 of Act 213 of May 12, 1942, as amended in turn by Act No. 155 of May 19, 1943 (Sess. Laws, p. 488).

On the other hand, paragraph 42 (Sp. 28) of § 1, defines a side lot line as follows:

"(42) *Side Lot Line,* Sp. 28—Any lot line which is neither a *street line* nor a *rear lot line.*"

Petitioner contends that her lot does not front on Aponte Street and that, therefore, the Board cannot require the same front yard as in the residential district located on the same side of Aponte Street.

It is apparent that the entire controversy revolves around what constitutes the front of petitioner's lot. She relies for support on paragraphs 10 (Sp. 18) and 39 (Sp. 27) of § 1 of the aforesaid Regulation which provide:

"(10) *Depth of Lot,* Sp. 18.—The mean distance from the street line to the rear line of a lot measured in the general direction of the side lines of the lot; *Provided, that in the case of corner lots it shall be considered as rear line the mean distance* from the street line up to any opposite side line measured *in the direction in which this is greater.*" (Italics ours.)

"(39) *Rear Lot Line,* Sp. 27.—The lot line opposite the *street line; It being understood* that in the case of a corner lot said line can be chosen by the owner, in which case it shall be indicated on the plans submitted to the Permit Official."

None of the latter provisions establishes a test for determining which is *the front* of a corner lot, different from that provided in the above cited paragraph 8 (Sp. 47). A corner lot fronts on two streets which intersect or join, and the restrictions which bear on the other lots of each street also affect said lot in the corresponding front, unless a specific exemption is granted. See *Howden* v. *Savannah,* 172 Ga. 833, 159 S. E. 401; *Monument Garage Corp.* v. *Levy,* 266 N. Y. 339, 194 N. E. 848; Basset, *Zoning,* p. 59 *et seq.* and Annotation in 159 A.L.R. 854. The owner of a corner lot may, pursuant to paragraph 39 (Sp. 27), choose the *rear lot line.* This, however, does not mean that the opposite end of said rear lot line becomes the *front* and the *other front* becomes a *side lot line,* since the latter, according to paragraph

42 (Sp. 28), may be any lot line *except the street line* or the *rear lot line*. And the *street line*, according to paragraph 44 (Sp. 26) of § 1, is "the dividing line between the street and the adjacent lot or parcel." We cannot, therefore, agree with petitioner's reasoning that, since the owner of a corner lot—which has *two fronts*—may choose the *real lot line* (which for the purposes of other Articles of the Regulation is considered the starting point), he may also select the *front*, thereby achieving by indirection what paragraph 42 (Sp. 28) directly forbids. Neither the *depth* of the lot, as defined in paragraph 10 (Sp. 18), nor the *rear lot line*, as defined in paragraph 39 (Sp. 27), can serve to determine the front of a corner lot, for the simple reason that such possibility is excluded by paragraph 42 (Sp. 28) which forbids that the *street line, or front* be a *side lot line*.

Paragraph 3 of § 49 of the Regulation does not allow the continuity of a front yard to be interrupted by a building in an adjacent commercial zone. This provision is in agreement with the aims of the statute and the erection of petitioner's building right up to the street line would defeat said purpose. Zoning, insofar as construction and use restrictions are concerned, is a necessary element of urban planning, which aims towards the most efficient and orderly development and growth of modern cities, in furtherance of public welfare over personal convenience. In that sense, zoning regulation is a comprehensive plan of coordinate measures to fully accomplish said purpose. See *Euclid* v. *Ambler Realty Co.*, 272 U. S. 365, 71 L. Ed. 303; Yokley, *Zoning Law and Practice*, pp. 1, 10, 11, and 46 *et seq.*

The right granted to the owner of a corner lot by paragraph 39 (Sp. 27) to choose the *rear lot line*, which is the *opposite* of the *street line*, does not have the scope claimed by petitioner, for if the choosing of the *rear lot line* resulted in fixing the front of the lot, there would be no need for the prohibition contained in paragraph 42 (Sp. 28), and the aim

886

and purpose of the law would be, in fact, substantially defeated. As stated by the Board, it is necessary to fix the *rear lot line* "in order to determine what a rear yard is in the districts which require such yards (Articles 20, 21, 24, 25, 28, 29, 32, 33, 34, 36, 37, 38, 41, 42, 46, 49, 50, 52 and 74 of the Regulations)." [2]

We cannot, therefore, agree with petitioner that the Board committed the first two errors in deciding that, under the provisions of paragraph 3 of § 49, petitioner must leave the required yard in front of her lot facing Aponte Street. Since the facts necessary to support the decision below, far from being challenged, have been accepted and used by petitioner throughout the proceeding, petitioner is barred from objecting to the findings of fact of the Board and the third assignment of error must therefore be dismissed.

The decision of the Board is hereby affirmed.

---

[2] We do not deem it necessary to copy the above-mentioned provisions of the Regulations.